UTICA,
July, 1833.

Leonard
v.
Gary.

## LEONARD vs. GARY.

Where an *endorser*, on being called on for the payment of a note, avowed himself *legally exonerated* from its payment, but declared that he did not wish to take advantage of such exoneration, and *promised to pay the note*, IT WAS HELD, that the promise was valid, without further proof of the endorser's knowledge that he had not been regularly charged.

*It seems*, that in such a case the *endorser* will be allowed to shew that no demand had in fact been made of the *maker*, and that consequently the promise was made under a misapprehension of facts ; but where, as in this case, sufficient time had elapsed for the demand, and the avowal of exoneration was distinctly made, including in it as well an admission of a demand as a want of notice, the defendant will be held to strict proof.

Where a note was payable *after ten days notice*, and notice was given, and before the expiration of the ten days the *endorser* of the note promised to pay it, telling the holder to give himself no uneasiness about it, as he would see him paid, *it was held*, that the endorser was estopped from alleging want of *demand* and *notice* of non-payment.

THIS was an action of assumpsit, tried at the Rensselaer circuit in September, 1831, before the Hon. JAMES VANDERPOEL, one of the circuit judges.

The suit was against the defendant, as the *endorser* of a promissory note for $1200, made by C. S. Tewksbury, bearing date 14th *May*, 1829, payable to the defendant *at ten days notice*. The signatures of the maker and endorser were admitted. On the note was an endorsement of $175, as paid by the *maker*, on the 30th *July*, 1829, which payment it was admitted was made by the *maker*. There was a further endorsement or memorandum on the note, in the hand writing of the *maker*, in these words : " It is understood that the above is to be called for, when the Merchants' and Mechanics' Bank of Troy require their payment on stock." On the 12th *December*, 1829, an agent of the plaintiff called on the defendant to make an arrangement for payment of the note ; the defendant said he *considered himself legally exonerated* or discharged as endorser from the payment of the note ; that he did not wish to take any advantage whatever ; that when he endorsed paper, he endorsed it to pay, and that he would see the plaintiff paid, if every cent of it came out of his own pocket. The agent told

the defendant that the maker had in July preceding paid $175 on account, which was endorsed on the note ; the defendant said that he was aware of it, and wished it had been more ; that he hoped the plaintiff would give him time, and show him all the indulgence he could.   In the same conversation the defendant offered to give *his own note* to the plaintiff for the amount of his demand, payable in one year ; and said, whether he would or not, the plaintiff should be paid ; that he hoped the plaintiff would give him time, whether he took the note or not, and wished the agent to tell the plaintiff not to give himself any uneasiness, he would see him paid, if he should pay it out of his own pocket.   The agent, on his cross-examination, stated that he did not recollect that he had the note in question with him at the time of this interview ; that he did not state to the defendant that any demand of payment had been made of the *maker* in his life time, or of his *administrator* since his death ; nor did he inform the defendant of the memorandum subjoined to the note.   The books of subscription of the Merchants' and Mechanics' Bank of Troy were opened about the 1st *June*, 1829, and that the first call on the stockholders was made on the 10th *December*, 1829.   Tewksbury, the *maker* of the note, died on the 25th *October*, 1829, and on the 7th *December*, 1829, demand of payment of the note was made by the plaintiff of the *administrator* of Tewksbury, which was the only demand ever made of the administrator.   The jury, under the direction of the judge, found a verdict for the plaintiff, which the defendant moves to set aside.

*S. Stevens*, for the defendant.   There was no evidence of demand of payment, and notice of non-payment, so as to charge the defendant as *endorser* of the note declared on.   The note, by its terms, was not payable until *ten days after notice* that payment would be required.   Conceding that the demand made of the administrator on the *seventh* of December may be considered such *notice*, it was still incumbent on the holder *ten days thereafter*, to wit, on the *seventeenth* of December, to make a formal demand of payment, (for until then the

note was not due,) and if payment was not made, to give no-
tice thereof to the endorser.   That such demand was made is
not pretended, and the contingency upon which the liabil-
ity of the endorser depended never happened.   Where a de-
mand has been made of the drawer, and the endorser, with a
full knowledge of the fact that notice of non-payment has not
been given, promises to pay, he is bound, 6 *Wendell*, 658 ;
but a promise to pay, when the event has not happened, upon
which his liability depends, is void, for the want of considera-
tion.   If what transpired on the *twelfth* of December may be
construed into an agreement to waive notice, it cannot be con-
sidered an agreement to waive demand of payment ; a waiver
of *notice* is not a waiver of *demand.*   6 *Mass. R.* 524.   A de-
mand of the *maker,* previous to his death, is not to be inferred
from the declaration of the defendant, that he considered him-
self exonerated, because *nothing is to be taken by implication*
against an endorser.   7 *Mass. R.* 449, 483.   4 *id.* 341.   6
*Wendell,* 658.   The fair presumption is that the defendant
acted under a misapprehension of his liability.

*S. P. Staples,* for the plaintiff.   The promise of the defen-
dant being absolute and unconditional, and made with a full
knowledge of his legal exoneration as *endorser* is binding, and
renders him liable to the payment of the note.   In *Lundie* v.
*Robertson,* 7 *East,* 231, which was an action by the endorsee
against the endorser of a bill, there was no evidence of *present-
ment* or *notice,* but upon being called upon *some months after the
bill was due,* the defendant promised to pay it, although he said
that he had not regular notice.   The court held that it was
to be presumed *prima facie* from the promise to pay, that the
bill had been presented in time, and that due notice had been
given ; that the promise superseded the necessity of the ordi-
nary proof, and that the observation that he had not had notice
did not vary the case, as he waived that objection.   So in *Gib-
bon* v. *Coggon,* 2 *Campb.* 188, where the drawer promised to
pay a bill, the jury were directed to presume that it had been
duly protested.   See also *Tayler* v. *Jones,* 2 *Campb.* 105.   It
is conceded that this court has introduced a modification of the
rule on the subject of proof in these cases as it prevails in Eng-

land: see 16 *Johns. R.* 152, and 6 *Wendell,* 658; but even within those decisions it is contended that the defendant should be held liable. When the promise was made, more than four months had elapsed after a payment of $175 by the maker. The fair presumption is that payment of the note had been demanded of the maker previous to such money being paid; the defendant knew of the payment, and expressed his regret that a larger sum had not been paid. He also knew that notice had not been given to him, and with a full knowledge that he was exonerated, for he said he was exonerated, he promised to pay. This case, therefore, is within the principle established by the court in the cases above referred to. But admitting that no demand had been made of the maker, or of his representative since his death, it is submitted that the defendant should be held bound, upon the principle that he agreed to waive the necessity of a demand and notice, and acknowledged his liability to pay. The maker had died in *October,* and probably knowing the situation in which he had left his affairs, and feeling the force of the obligation he was under to the plaintiff, the defendant sent word to the plaintiff not to give himself any uneasiness about the debt, for he would see him paid, if every cent of it came out of his own pocket, and offered to give his own note for the debt. This case, in this particular, is like *Leffingwell* v. *White,* 1 *Johns. Cas.* 99, where, during a negotiation between the endorsee and endorser as to the payment of a note before it fell due, the time of payment elapsed and no demand was made of the maker, or notice given, it was held that the ordinary proof might be dispensed with, and that the endorser should be bound.

*By the Court,* NELSON, J. It is well settled in this court, that a promise of the endorser, although absolute and unconditional to pay the note to the holder, will not of itself dispense with regular demand and notice; but that the plaintiff must shew affirmatively that the defendant knew he had not been regularly charged; and the reason given is, an endorser may believe due notice given, inasmuch as notice need not be personally served, and under a misapprehension of the fact, consider himself liable. *Trimble* v. *Thorne,* 16 *Johns. R.* 152.

*Jones* v. *Savage,* 6 *Wendell,* 658. Within this rule I am of opinion the plaintiff should retain the verdict. When called upon for payment of the note, the defendant avowed himself legally discharged as endorser, but disclaimed availing himself of such advantage, and in the most deliberate and positive manner promised to pay the note. Here was no misapprehension of facts or of law, and the promise was made with a perfect understanding of both. But the counsel for the defendant contends he acted under a mistake; that he was not discharged at the time, as the note was not due, the ten days notice not having been given; and that inasmuch as the promise was made before the note was due, it would not operate as a waiver of demand and notice. Whether the defendant was laboring under a mistake or not, after the avowal made, was for him to establish, and though he proved that a demand was made upon the administrator of the maker on the 7th December, and that that was the only demand made on him, there is still nothing in this incompatible with the fact of a demand having been made upon the maker before his death. The payment of the $175 by the maker on the 30th July, rather favors the inference that such demand was made, and if so the defendant was not mistaken; he was discharged. There is nothing, then, in the evidence contradicting the truth of the defendant's declaration that he was discharged from the note when the promise to pay was made.

But I do not intend to rely upon this answer to this ground of defence; it is admitted a demand was made upon the administrator on the 7th December, and on the 12th the defendant was called upon. The ten days had not expired, and therefore, says the defendant, the note was not due, and the promise no waiver of notice. But are we not bound to infer that the language of the defendant put the plaintiff off his guard, and thereby prevented him from giving the regular notice? He told the agent of the plaintiff, when he endorsed paper, he endorsed it to pay; that he would see the plaintiff paid, if it took every cent in his pocket; he asked the plaintiff to give him time; offered to give his own note for the debt, payable in a year, and whether the plaintiff would take it or not, he should be paid; and directed the agent to tell the plain-

tiff to give himself no uneasiness about it, as he would see him paid, if it came out of his own pocket. After all this, can the defendant be permitted, on the expiration of the time when notice should be given, to insist upon it, more especially when such notice would be wholly useless to him? 1 *Johns. Cas.* 99. 7 *Wendell,* 168.