By the Court,

Cowen, J.
There is no foundation for saying that Tuffs is not a competent witness on being released. It is simply the common case of a first, endorser, released by and offered as a witness by his endorsee. It is doubtful whether he was not competent without any release (Barretto v. Snowden, 5 Wendell, 181).
The objection that Tuffs was discharged by the non-presentment of the bill for $900, is one of more difficulty. Neither presentment for acceptance (Chitty on Bills, 300, Am. ed. 1836; De Bert v. Atkinson, 2 H. Black. 336), nor notice of non-acceptance or non-payment (Chitty on Bills, 355, and the cases there cited), is necessary, provided the drawee never had any effects of the drawer in his hands (Chitty on Bills, 355, 6, 7, and the cases there cited), or have withdrawn them before the day of payment, without giving notice of the bill (Valk v. Simmons, 4 Mason, 113). It is otherwise where there are effects (id.), and the reason is that the drawer may protect himself by withdrawing them or withholding the farther accumulation of effects in the drawee’s hands (Chitty on Bills, 355). Formerly it was necessary, in order to complete the defence, that the drawer should prove damage to himself arising from the holder's laches; but now it will be presumed (Chitty on Bills. 355). Yet the presumption is not conclusive. If it appear in truth that no damage could arise, the necessity for presentment or notice *58 does not exist. One instance is the common one already mentioned, of no effects with the drawee, or their being withdrawn. Beside, notice of demand and non-payment is equally necessary to the endorser of a bill or note, who is but another drawer. The reason here is the same, and it may be added in respect to both, that the notice is required for the additional [98] reason that the parties may take their remedy over against other parties who are liable to them. But this is not necessary where there is no loss and no liability in the case, and that fact is clearly shown by the holder to whom the laches is imputed. One case is an assignment, by the maker, of all his property to secure the endorser, before the note falls due (Bond v. Farnham, 5 Mass. Rep. 170). So if the. endorser has accepted a general assignment of the maker’s estate and effects (Barton v. Baker, 1 Serg. & Rawle, 334). These cases are recognized and acted upon as sound law, in Mechanics’ Bank of N. Y. v. Griswold, 7 Wend. 165, wherein a similar point was decided. A full indemnity to the endorser excuses both demand on the maker and notice to the endorser (Durham v. Rice, 5 Yerg. 300); otherwise it would be but partial (Brunson v. Napier, 1 id. 199). Several other cases have gone upon the same distinction (Mead v. Small, 2 Greenl. 207, and see Prentiss v. Danielson, 5 Conn. R. 175). It has been held in some cases that if the endorser know of the maker’s absolute and recorded insolvency, at the time of the note falling due (Clark v. Minton's adm'x, cited 2 Const. R. 682, Kiddell v. Ford, id. 678), that is enough. But any insolvency short of that will not do (id.); and our own cases have not yet gone so far (7 Wend, 169, and Jackson v. Richards, 2 Caines, 343) In the Mechanics' Bank of New York v. Griswold (7 Wend. 168), Mr. Justice Nelson said: “ Upon the maxim, that when the reason for the rule of law does not exist, it ought not to be applied, it has frequently been decided, that in the cases where the n n-payment by the maker and failure of notice to the endorser can not possibly operate to the injuiy of the endorser, the omission will nol discharge him. Thus where the endorser is himself the debtor, as where the note is discounted for his accommodation and the money raised upon it is received by'him, and therefore he ultimately holden to pay it, it is obviou.* that the reason of the rule can not apply;” and to this he cites several cases. It is no confusion of terms to take this reasoning and apply it directly to-this case. An endorser is a drawer in every sense of the word et sic e converso (Chitty on Bills, 218, 219). Here we certainly have a very strong [99] current of authority for saying, that where the endorser or drawer has plainly suffered nothing, and can sustain no mischief for want of demand and notice, none need be made or given; and it accords with the true and only reason why such demand and notice are called for. The question seems merely to be one of evidence. The drawer or endorser is presumed to have been injured by the omission, until the plaintiff, by proof on his side, remove all chance of damage.
In. the case at bar, the $900 bill was not remitted, in consequence of which, instead of sustaining any loss himself, the drawer tells us he got the money out of the hands o'f the drawees. In reply, it was proposed to prove that Tuffs drew the $900 bill for the accommodation of Cook, who had become insolvent; that the avails were invested by Tuffs in merchandise shipped to the drawees, from whom Cook received the proceeds of the shipment; that Cook continued in good credit till the 1st of April, 1834, when he failed and absconded. In February, preceding, Tuffs had received his account from Ridgeway & Leversee, the drawees, stating a balance of about $700, which Cook was bound to pay; but Tuffs did not examine the account so as to learn whether the draft was charged to him. It was handed over to Cook, nor did he learn that it had not been paid till told so by the cashier in June. It was also proposed to prove by Tuffs that he should have taken measures *59 against Cook, had his attention been drawn to such a state of his account as the additional §900 would have presented. Some of this evidence was expressly overruled, all was objected to, some portion was heard, but all virtually excluded by the judge in his direction to the jury. He put the whole question on a subsequent premise by Tuffs. That all the testimony offered and given in respect to any loss through Cook would have amounted to any thing in the mind of the jury, we can not say. Should the jury be unable to say clearly that no loss through Cook arose from the want of a presentment, I am not prepared to hold that the rule dispensing with notice would be satisfied. Had the bill been presented, the difference of balance in the account of the drawees might very well have aroused Tuffs’ atten- [100] tion, and led to greater vigilance in respect to Cook; yet Tuffs’ loss in that quarter was a consequence quite remote, and if it arose from mere omission to look over the account, would seem to savor of gross negligence. All this was, however, shut out, and perhaps properly; and the plaintiffs complain that Tuffs was holden to be discharged while he held the very funds which he drew, merely for want of sending on the bill. Non constat that he had suffered any damage—nay he could not have suffered. He held the money for the use of the plaintiffs, and good faith would require him to pay it. Such is the result of the evidence as it stood before the jury. I think on the whole that Tuffs must be taken to have been a debtor to the bank as drawer, or as for money had and received, on the day when he drew for his deposit money to the amount of the $900.
But it is insisted that if he was thus indebted, yet the plaintiffs had no power to apply his deposit money to the payment of the $900 draft, any more than to the payment of the bill now in question; that the $1502 on deposit, were in the hands of the plaintiffs as his servant or agent, from whom he might take it as from his own chest, and pay and apply it on what debt of his own he pleased; and that his direction to apply it on the bill in question was binding on them; that it was for him to pronounce on the debt, to pay which, the money should be applied. I apprehend this is a mistaken view of the matter. The case is not one which comes within the rule as to the appropriation of payments. Had the money been in Tuffs’ hands, or in the hands of the plaintiffs as his servants or bailees, that would have perhaps been so. For instance, had the $1502 been placed in a keg or bag, and specifically receipted by the plaintiffs to be delivered on demand, the question would have arisen. But I understand these deposits to create the relation of debtor and creditor. The bank takes the money in the nature of a gratuitous loan, and charges itself with a debt absolutely due to the depositor. It is not the case of a technical bailment. Should the money be lost without the fault of the bank, it would be liable. The transaction is called a [101] deposit; and formerly, perhaps, was so in fact, and may still be made so. But such is not the course of business. Tuffs and the plaintiffs then, were mutually indebted to each other; and he could only call as a matter of right for the balance due him, which would be his $1502 less the $900. So much he had a right to appropriate to the bill in question by his check; but no more. Between two persons mutually indebted, the balance is the debt.
On the whole, there must be a new trial upon the sole ground that, as the case was put to the jury, it supposed and distinctly presented the drawer taking back the very fund, originally devoted to answer the bill for which he had received value. I admit the liability of the drawer or endorser is, in general, conditional, and depending on demand and notice; and that ihe rule should be strictly adhered to. Without demand and notice, he is prima facie discharged. He is conclusively discharged, unless it appear, and that clearly, that he could suffer no injury from the laches of the holder. Such I take this case to be, if we lay out of view the relation which arose between Tuffs and *60 Cook, and the loss alleged by Cook’s insolvency in consequence of Tuffs being put off his guard. That being inadmissible, the case is a clear one. Usually, the inquiry as to loss, has been confined to the fund with the drawee, acceptor or maker. Has the drawer or endorser lost by him ? I do not know how we can look into losses from dealings or speculations with the fund as between the drawer or endorser and third persons. It would open an uncertain and impracticable inquiry. But we are not called on to decide the question.
One word further may be due to the question of competency. After Tuffs was released, he still appears to have been left under an impression that he was interested. He said if the plaintiffs recovered the whole amount due on the bill in question, he should lose $900 by Cook; and this was pressed upon us as an objection upon the ground of incompetency. We wish it understood, if it be not so already, upon plain and full authority, that the witness is not to be received as the judge upon this question of competency. Credibility is another matter. Mental interest, or moral, or honorary obligation, [102] may go to the jury; but legal technical interest alone, is to govern the presiding judge. The distinction was necessarily involved in almost all the numerous cases which have overruled the objection of apparent interest, and seems perfectly at rest in England (1 Phil. Ev. 53. 7th ed.) I confess I had supposed the distinction equa.ly well settled in this state, and have always acted on it. I find, however, it is left in some obscurity by The Trustees of Lansingburgh v. Willard (8 Johns. R. 428), the case now mainly rel ied on by the plaintiffs’ counsel; and it must be confessed the American authorities have been singularly vascillating. When I say so, I mean upon the point of fancied legal, not honorary obligation. The following are some of the cases which exclude for that imaginary legal interest: The Trustees of Lansingburgh v. Willard, already cited, may be set down as one case. To which, add Richardson's ex'r v. Hunt. 1 Munf. 148; Skillinger v. Bolt, 1 Conn. Rep. 147); Plumb v. Whiting. 5 Miss. Rep. 518; M'Veaugh v. Goods, 1 Dall. 62, cited and approved; 2 Dall. 50; Freeman v. Luckett, 2 J. J. Marsh. 390. The following and better considered cases, are the other way: Fernsler v. Carlin, 3 Serg. & Rawle, 130; Rogers v. Burton, Peck, 108; Long v. Baille, 4 Serg. & Rawle. 222; State v. Clark, 2 Tyl. 373; Stinimel v. Underwood, 3 Gill & John. 282; Havis v. Barclay, 1 Harp. 63. On the other hand, a witness really interested, shall not be received, because he thinks he is not so (Doe ex dem. Stales v. Bragg. Ry. & Mood. N. P. Cas. 388). These latter decisions are in harmony with the cases, which are quite uniform, that a mere honorary obligation shall not disqualify a witness. Wells v. Lane, 8 Johns. 462; Gilpin v. Vincent, 9 Johns. 219; Moore v. Hitchcock, 4 Wendell, 292, with many other American cases, all one way. Mr. Phillips, after reviewing the numerous English cases, which receive a witness, though he still appear to be interested in the question merely, adds: “ The witness in those cases would probably have admitted that he believed himself interested; and it was upon the supposition of this fact that the objection must have been founded. Those cases, therefore, in which [103] such objections were overruled, appeared to have determined this point, that a witness will not be incompetent merely on the ground of his believing himself interested” (1 Phil. Ev. 53, 7th ed.) American cases of the same sort, have multiplied to an almost infinite variety.
New trial granted; costs to abide the event.