# CASES IN CHANCERY.

## Brooklyn Bank v. Waring and others.

W. was the accommodation indorser of his son N., on a note to B., payable at the complainant's bank, on the 31st July. By an error of their clerk the note when left for collection, was entered as due 31st August, and was not presented for payment at its maturity, nor any notice of its non-payment given. N. was aware of there being a mistake at the bank as to the time when the note would fall due; but to provide for its renewal in case it should be properly presented, he prepared a new note for the same amount dated 31st July, and his check for the discount, and left the same with his partner who was the notary of the bank, to obtain his father's indorsement on the note, and renew the old note if it were presented on that day. W. on the 31st July called on the notary and indorsed the new note, but nothing was done with it. B. claimed the amount from the bank on the neglect to charge the indorser, and the bank paid B., and then sued W. on the old note. W. defended the suit. Some months after, two large mortgages of W. to the bank, on distinct parcels of land, fell due, and W. desired an extension of payment. The result was an agreement, by which W. paid about one-third of N.'s note, and executed a new mortgage to the bank for the amount of the two former, payable at a future day, and embracing both parcels of land. *Held*, that the mortgage was not usurious.

A doubtful claim prosecuted in good faith, is a good consideration for a promise made on compromising and settling it; and the promise cannot be impaired by showing that the claim was invalid.

And where an indorser, discharged by the laches of the holder, with full knowledge of the facts, yields to the claim of the holder and promises to pay the note, an action on the note can be maintained on such promise.

It seems, that under the circumstances W. was liable as indorser, independent of the new agreement.

   Decided in 1843.

The bill in this cause was filed to foreclose a mortgage of $22,000, dated August 24, 1838, executed by Waring to the complainants, on lands in Brooklyn. The defence was, that $1000

Vol. II.                          1

was exacted from W., for the forbearance of the debt, on execut-ing the mortgage, and that it was therefore usurious.

It appeared that the complainants, on receiving this security, cancelled two mortgages which they held against W., one for $15,000, payable March 16, 1838, and the other for $7000, on different property, due about the same time.   The new mortgage included all the lands which were described in those given up.

The facts proved respecting the $1000, were these.   In No-vember, 1836, N. a son of the mortgagor, gave a note for $3150, to Mott Bedell, payable in six months, at the Brooklyn Bank, which the mortgagor indorsed for his accommodation.   On the 29th of May, 1837, this note was renewed, by a like indorsed. note at sixty days ; which was afterwards lodged by Bedell at the bank for collection.   By an error of one of the clerks in the bank, the note was entered as falling due on the 31st of *August* instead of *July*, and a bank notice of its maturing on that day was sent to N.   On the 31st of July N. was absent in the country, but a few days prior when about to depart, he drew and signed a new note for $3150, payable to his father, and dated 31st July, and left it together with his bank notice, and his blank check, with his partner, Mr. Covert, with instructions to obtain his father's indorsement, and with it to renew the former note if it fell due while he was absent, filling the blank check with the discount.   He further instructed Mr. Covert, if he heard nothing from the note on the 31st July, to give himself no further trouble about it.   Mr. Covert was the notary of the bank, into whose hands the current note would regularly come, if it were demanded and protested.   W. himself called on Mr. Covert, on the 31st July a little after noon, inquired for the note intended for renew-al, and indorsed it.   The old note was not presented in form for payment, and no notice of its non-payment was given to W. and therefore Mr. Covert returned the renewal note and check to N. At this time N. was insolvent, and from the testimony it was inferrible that his father was aware of his situation.   The error at the bank was discovered ten or twelve days after the note should have been protested.   Bedell claimed the amount from the bank, on the ground of their default in charging the indorser ;

and they wishing to avoid a controversy with Bedell, paid the same to him, and thus became the owners of the note.

In the fall of 1837, the bank sued W. on the note as indorser, which suit was pending when the mortgage in question was given.

When W.'s mortgage of $15,000, and $7000, fell due, the bank called on him for payment, and he applied for an extension. A friend of W.'s proposed to the bank a settlement of the suit on the note, in connection with the extension of payment on the mortgages. A negotiation ensued between W. and the bank respecting the mortgages and the note, which resulted in a sealed agreement between them, dated June 6, 1838. This contract recited that W. was indebted to the bank, $22,000 on the mortgages, and $1000, being a part of the sum due to the bank on N.'s note ; and it provided for extending the payment of the $22,000, on W.'s giving a single mortgage on the whole premises incumbered by the two then outstanding, and his note for the $1000 payable May 1, 1839 ; on which the bank was to cancel the prior mortgage debt, and relinquish all further claim against him upon the note. This agreement was carried into effect on the 24th of August, 1838, and W.'s note was paid at maturity. The bank arranged the residue of the note with N., about the time of entering into the agreement with W.

*John A. Lott,* for the complainants.

*H. F. Clark,* for the defendant Waring.

THE ASSISTANT VICE-CHANCELLOR.—When W. agreed to give the note for $1000, which he alleges was made solely in consideration of the forbearance of the mortgage debt, the bank had an undisputed claim against him for that debt, and a claim for $3150 more, which he disputed and denied. On a review of the circumstances, I think that the mortgagor has failed to show that the note was given for the alleged forbearance, or as a cover to an usurious transaction.

1. The liability of W. on the note of $3150, if not clear, was a very serious question. It is not necessary for me to decide the

point, but I must say that my impression is that he was liable. Nelson, J. in *Mechanic's Bank of N. Y.* v. *Griswold*, 7 Wend. 165, says "the object of notice is to advise the indorser of his situation, that he is to be held responsible, so that he may take such steps as he thinks proper to indemnify himself against his liability." "Upon the maxim that when the reason for the rule of law does not exist, it ought not to be applied, it has frequently been decided that where the non-payment by the maker and failure of notice to the indorser cannot possibly operate to the injury of the indorser, the omission will not discharge him." And see *Commercial Bank of Albany* v. *Hughes*, 17 Wend. 94, to the same effect.

Now what possible injury resulted to W. in this instance from the omission? He knew the note was not paid. He knew it would not be paid. He came with that knowledge and for that cause, and indorsed the new note prepared to replace the one which was then falling due. If the old note had gone into Mr. Covert's hands to be protested, and notice had been given, W. would have done no more than he had done already. In fact if it had reached the notary's hands, the note would not have been protested- Mr. W. would have heard nothing from it. And his situation and the extent of his liability in June, 1838, would have been the same precisely as it actually was, with the immaterial exception of the payment of the discount for sixty days, for which his son had provided the check. A defendant in a suit sought to be charged as indorser on a note of $3150 under circumstances like these, might well congratulate himself on being let off for $1000.

2. But suppose Mr. W. was not liable on the note after the 31st of July, 1837, and that the complainants' suit would have failed. He knew all the facts—he insisted that he was not liable; yet by the agreement of June 6, 1838, he promised to pay $1000 of the note, and in August following ratified the promise by giving his note for that amount. It is well settled that evidence of such a promise would sustain an action against him on the note for the amount. (*Tebbetts* v. *Dowd*, 23 Wend. 379, 411; *Davis* v. *Gowen*, 5 Shepley's R. 387.) Whether put upon

the ground of waiver, or of a moral obligation which forms a consideration, the consequence is undeniable.

The motives for recognizing and paying a portion of this claim referrible to the manner in which the legal liability was lost, (if it were discharged;) are ample to support the note for $1000, and it seems to me that it would be inequitable, and do injustice to Mr. W. himself, to hold that these considerations were of no weight with him, and that the forbearance was the sole inducement for assuming the $1000.

3. There is still another view of this case. The Bank claimed the whole amount of this note against W. The suit at law brought against him, five or six months before the prior mortgages became due, is conclusive to show that the Bank made this claim in good faith, and without the slightest reference to the disposition of it which was subsequently made. The claim was contested, and doubtless with equal good faith. It was then compromised by the payment of less than one-third of its amount. If no other transaction had been connected with it, such a compromise would not have occasioned surprise, and scarcely remark. Probably Mr. W.'s own friends would have declared it a favorable settlement. At all events it is well settled that such a compromise cannot be disturbed. In *Russell* v. *Cook*, 3 Hill's R. 504, it was decided that a note given upon the settlement of a doubtful claim preferred against the maker, will be upheld, as founded upon a sufficient consideration, without regard to the legal validity of the claim. In *Stoddard* v. *Mix*, 14 Conn. R. 12, there was a similar decision in a case like the one at bar. There a suit had been brought upon a bill of exchange, against the drawer; and the defence was that the bill had never been presented for payment. The suit was settled by the defendant's giving his note for a part of the bill without costs.

In *Leonard* v. *Leonard*, 2 Ball & B. 171, it was held that the validity of a compromise cannot depend upon a subsequent adjudication of the rights; and equity will not set aside a compromise of doubtful rights on the ground of its being prejudicial to one of the parties to it. And in *Steele* v. *White*, 2 Paige, 478, the Chancellor held that when a party in a suit compromises the same, without any fraud or imposition, he cannot be relieved

from it, although he shows that it was not beneficial to him, or that he had the right to recover in the suit in point of law. The authorities to this effect are very numerous, but these will suffice.

I have no doubt but that the extension of time upon his large mortgage debt, entered into the inducements, which resulted in Mr. W.'s giving the note of $1000. But it is impossible to hold that this was the only or the chief inducement, when there are so many strong and sufficient reasons for the act, which form a valid legal consideration.

The testimony does not prove any imposition or oppression. The first proposition connecting the $3150 note with the mortgages, came from Mr. Kimberly, the friend and relative of the mortgagor. What one of the sons relates as having been said in that connection, soon after the note of $3150 fell due, must have been an error as to time at least; for the mortgages had then been given but a short time, and would not be due in seven or eight months.

But I need not collate the testimony. It does not add to or vary the agreement, as evidenced by the written instrument executed by the parties.

I have not looked into the point of variance between the usury proved and that alleged in the answer. I have preferred to rest the case upon the merits.

The complainants are entitled to the usual decree for a foreclosure and sale of the premises.