Bronson, J.
Actions against foreign corporations may be commenced by attachment, by a .resident of this state. (2 R. 8. 459, h 15.) The objection, is, that the plaintiff did not prove that he was a resident. In the circuit and district courts of the United States, the facts upon which their jurisdiction depends must be alleged in the declaration, and proved on the trial. But these are courts of limited jurisdiction. The rule is otherwise in courts of general jurisdiction. There, as a general rule, the defendant must plead to the jurisdiction. A plea in bar of the action admits that the court may take cognizance of the cause. The objection on the trial went to the ability of the plaintiff to sue by attachment. That might, perhaps, have been pleaded in abatement; and if so, the objection was lost by pleading in bar. A motion to set aside the attachment for irregularity would have been the best mode of raising the question. But clearly, after appearing and pleading in bar, it is too late to make the objection that the suit was not properly commenced.
This is the common case of an account between a bank and *299 one of its dealers. The usual course of such business is, for the dealer to deposit his money with the bank, to be repaid upon his checks or drafts, or in taking up his notes or acceptances made payable at the bank. It is not strictly a deposit, nor a bailment of any kind; for the same thing is not to be returned, but another thing of the same kind and of equal value. In the civil law it is called a mutuum, or loan for consumption. Except where the deposit is special, the property in the money deposited passes to the bank, and the relation of debtor and creditor is created between the parties. (Commercial Bank v. Hughes, 17 Wend. 94.) Still, the commonly received opinion is, that the banker cannot be sued for the money until after the customer has drawn for it, or in some other way required its repayment. Mr. Justice Story says, the bank is to restore the money “ whenever it is demanded.” (Story On Bailm. 66, § 88; and see Marzetti v. Williams, 1 Barn, & Ad. 415; Chit. On Bills, 547, ed. of 1839; Chit. Jr. On Bills, 44.) Judging from the ordinary course of this business, I think the understanding between the parties is, that the money shall remain with the banker until the customer, by his check, or in some other way, calls for its repayment: and if such be the nature of the contract, the banker is not in default, and no action will lie, until payment has been demanded. No one could desire to receive money in deposit for an indefinite period, with a right in the depositor to sue the next moment, and without any prior intimation that he wished to recall the loan. I do not find that the point has ever been decided; but it may be that this is the first case where a man has sued his banker without first drawing on him for the money.
We are reminded that, where the promise is to pay on demand, the bringing of the action is a sufficient request. If that were a new question I think the courts would not again fall into the absurdity of admitting that there must be a demand, and still holding that a suit may be commenced without any prior request. They would either say that no demand was necessary, or else that it was a condition precedent to the right of action. It is an anomaly in the law that the breach of the *300 defendant’s contract should be made out by the very fact of suing him upon it. In all other cases there must be a breach before suit brought. The rule ought not to be extended to cases which do not fall precisely within it. Here, the contract to be implied from the usual course of the business is, that the banker shall keep the money until it is called for. Although it is not strictly a bailment, it partakes in some degree of that character. That is enough to distinguish it from the ordinary case of a debt payable on demand, though it must be admitted that the distinction is not a very strong one. '
Some stress has been laid upon the fact that a balance had been struck upon the plaintiff’s bank-book by one of the clerks in the bank. That was but the ordinary transaction of writing up the customer’s book; or, in other words, setting the debits, or sums which had been paid upon his checks, against the credits which were given in the book at the time the deposits were made. It only rendered the account complete up to the time when the balance was struck. It furnished no evidence of a change of the contract upon which the money was received in deposit.
Nelson, Ch. J„ concurred.
Cowen, J.
If the usage assumed by my brethren in this case had been proved, I should think the action premature; but I do not believe we can take judicial notice of it.
New trial granted.