## ADAM HUNT *versus* IRA WADLEIGH.

The transfer by the indorser of a previously indorsed and protested draft by delivery, is equivalent to the drawing of a new draft on the acceptor, payable on demand or at sight; and it becomes the duty of the holder to present it to the acceptor for payment within a reasonable time, and to give notice thereof, if not paid, to the indorser.

The insolvency of the acceptor of a bill or draft does not excuse the holder for neglecting to make presentment thereof.

If the drawer or indorser, after full knowledge of the fact of an omission to make due presentment, promises to pay the bill, it will amount to a waiver of such presentment, and bind the promisor to pay the bill. But such a promise, made in ignorance of the facts, will not be binding, or a waiver of the laches.

And the plaintiff must show affirmatively, that the defendant knew he had not been regularly charged.

ASSUMPSIT against Wadleigh, as indorser of a bill dated August 23, 1837, for $312,16, drawn in his favor, and by him indorsed, by E. S. Goodnow on Porter & Harlow, and by them accepted, payable in four months. The bill was duly presented to the acceptors, and protested for non-payment. The protest was introduced in evidence, as were also the depositions of Claflin, Cheney and Lane, subject to objection, at the trial before TENNEY J.

The case was then taken from the jury, by consent of parties, and submitted to the decision of the whole Court, they having the same power as a jury to ascertain facts and draw inferences from the evidence which should be deemed admissible, and to enter judgment by nonsuit or default.

The material facts, considered by the Court to have been proved, appear in the opinion of the Court.

*Wakefield* argued for the plaintiff, citing Story on Bills, § 373; Bayl. 498; 7 East, 231 and 236; *Fuller* v. *McDonald*, 8 Greenl. 213; 6 Wheat. 572; 12 Peters, 497; 5 Pick. 446; 4 Pick. 525; 20 Maine R. 98; 3 C. & P. 338.

*Ingersoll* and *Cony* argued for the defendant, citing 21 Maine R. 455; 2 Conn. R. 419; 17 Maine R. 387; 19 Maine R. 447; 1 Cowen, 398; 14 Mass. R. 116.

The opinion of the Court, WHITMAN C. J. dissenting, was prepared by

SHEPLEY J. The only testimony presented on the part of the plaintiff is contained in two depositions. It appears from the testimony of Lea Claflin, that the plaintiff held a note against the defendant, who was called upon for payment of it during the summer of the year 1840. That an arrangement was then made between the parties to make payment of it by the transfer and delivery of a draft, which had been drawn on August 23, 1837, by E. S. Goodnow of Nashua N. H. on Porter & Harlow at Bangor, payable to the defendant or his order in four months after date, for the sum of three hundred and twelve dollars and sixteen cents. This draft had been indorsed by the defendant,.accepted, presented at maturity for payment at Bangor, where the acceptors were not found; the notary being informed, that they were in Boston, protested the draft and gave due notice to the other parties. The defendant having received it from the bank, in which it had been left for collection, delivered it to the plaintiff, who then delivered to the defendant his note.

The transfer of the protested draft to the plaintiff, by delivery, was equivalent to the drawing of a new draft on the acceptors payable on demand or at sight. It became the duty of the holder to present it to the acceptors for payment, within a reasonable time, and to give notice thereof, if not paid, to the defendant. Story on Notes, § 267; *Jones* v. *Swan*, 17 Wend. 94; *Greely* v. *Hunt*, 21 Maine R. 455. There is no proof, that such a presentment was ever made. Nor any proof, that the defendant, when the draft was delivered to the plaintiff, made any remarks, from which an intention to waive it can be inferred.

The next information respecting the draft is derived from the deposition of Ira Cheney, who states, that during the spring and summer of 1842, George O. Brastow, whom the defendant subsequently admitted to be his agent, called upon him several times respecting it, offered to pay ten cents on a dollar for it, and requested him to communicate this offer to the plaintiff;

that he did do so, and the plaintiff refused to accept it. The witness further states, that he received the draft of the plaintiff, and by his request called upon the defendant for payment of it in July, 1843. That "he said he was able to pay that debt, and if Mr. Hunt would say, that he, Wadleigh, was to be holden on the draft, he would pay it. It was agreed, that he, Wadleigh, was to write to Hunt about it, before I saw Hunt, and that if Hunt would say to him, that he understood him, Wadleigh, to be liable at the time he passed it, he would pay it." That the defendant called upon him in September following and offered to pay ten cents on a dollar for it, and that during the conversation he said "he did not doubt, but that he was liable by law, and that he expected Hunt would get an execution against him." That he admitted, that he had written to Hunt and obtained an answer from him; and that the drawer and acceptors of the draft had been unable to pay it, since it was protested.

The insolvency of the acceptors does not excuse the holder for neglecting to make a presentment. *Gower* v. *Moore,* 25 Maine R. 16. The remark of the defendant, that he did not doubt, but that he was liable by law, does not authorize one to conclude, that he had any knowledge, that the draft had not been presented for payment. It was evidently made under a misapprehension of the law, that he was liable without it. There is no evidence therefore, that the defendant had any knowledge, that it had not been presented, or that he had been discharged by the laches of the holder. And without such proof his subsequent promise to pay, if the condition were fulfilled, is not binding. "Ift he drawer or an indorser, after full knowledge of the fact of an omission to make due presentment, promises to pay the bill, it will amount to a waiver of such presentment, and bind the promisor to pay the bill." But such a promise, made in ignorance of the facts, will not be binding or a waiver of the laches." Story on Bills, § 373, 320; Story on Notes, § 361; Chitty on Bills, 536 to 539, (8th Ed.;) Bayley on Bills, 294, (Ed. of P. & S.) And "the plaintiff must show affirmatively, that the defendant knew, he

had not been regularly charged." *Leonard* v. *Gary*, 10 Wend. 504; *Davis* v. *Gowen*, 17 Maine R. 387.

The plaintiff fails to show by the testimony presented, that he is entitled to recover.

*Plaintiff nonsuit.*

The following dissenting opinion was delivered by

WHITMAN C. J. — This case was, by consent of parties, withdrawn from the jury, and referred to the Court, to determine, as a jury might, as to matters of fact, and to ascertain the legal rights of the parties.

Certain depositions, taken in behalf of the plaintiff, are to be examined, if necessary; provided they can be considered as legally admissible; and, if admissible, such parts of them, only, are to be allowed to have weight as may be found to be legal testimony. To their admissibility it is objected, that notice to the adverse party, of the intention to take them was not such as is prescribed by law, inasmuch as it does not name the justice before whom they were intended to be taken. The Revised Statutes, c. 133, § 14, provides, that "when any deposition shall be taken out of the State, and not under a commission, the adverse party or his attorney shall be duly notified." The form of notice to be given, (§ 11,) when depositions are to be taken within the State, does not seem to require any thing more than the time and place to be named; unless the deposition be to be taken before a justice of the peace, other than the one issuing the notice. Notice of the time and place of caption would seem to be of use to the adverse party to enable him to be present. Whether then and there to be taken by one magistrate or another it would be unimportant for him to be informed; and that information was given.

It is true that the caption is, in many respects, quite informal; but there can be no doubt, that the deponents were sworn to tell the whole truth, touching the matter pending between the parties; and, as by § 22, of said chapter, we are authorized, at discretion, to admit or reject depositions taken out of the State, and as the adverse party appears to have had rea-

sonable notice of the time and place of caption, and the deponents appear to have been sworn to tell the whole truth, and in so doing could not tell any thing but the truth, we think the depositions were admissible; and this decision is sustained by the authority of the cases of *Blake* v. *Blossom*, 15 Maine R. 394, and *Haley & al.* v. *Godfrey & al.* 16 *Ib.* 305.

We may then look into those depositions, and allow such parts of them as are admissible as testimony to have influence in settling the matters of fact in the case. And from the admissible portions of the evidence therein contained we gather, that the claim of the plaintiff originates from a negotiation between him and the defendant, which took place in the summer of the year 1840, in reference to an accepted bill of exchange, of which the defendant was then the holder, and on which he had before placed his name as indorser, which became due in 1837, and was, at maturity, protested for non-payment. The plaintiff having a demand against the defendant to about the same amount, was, at the time first named, induced to accept of that bill in payment of his claim; but it is not in evidence, that he has ever called upon the acceptor or drawer for payment of the amount due on it; and, if he had, it is manifest, that it would have been but a useless ceremony, as they have been, since the protest of the bill, utterly worthless; of which the defendant was well knowing.

But the defendant insists, that the case is within the principle of that of *Greely* v. *Hunt*, 21 Maine R. 455; and, if nothing further appeared in this than in that case, it might be admitted to be so. In that case there was no evidence, that the maker of the note had been called upon for payment, though it had been due over a year; and it was not proved that the defendant, at the time he passed it to the plaintiff, knew it to be worthless. Reliance in that case was placed upon the ground of a waiver of demand and notice, evidenced, as it was contended, by the insolvency, at the time of transfer, of the maker, and the presumed knowledge of that fact on the part of the defendant. But the Court considered the indorsement of the note as the drawing of a new bill, and that

the evidence, relied upon by the plaintiff, as proving a waiver, was not sufficient for the purpose. In the case at bar the bill had been protested for non-payment; and had remained unpaid in the hands of the defendant for about three years, with knowledge of its worthlessness. Putting it off under such circumstances, he could but know, that a further demand upon the acceptor and drawer would be fruitless, and nothing but an idle ceremony. Notice that it had been done could not have been of the slightest utility to him.

The law that demand should be made, and notice of non-payment be given, is bottomed upon a principle of justice. When the reason of the rule ceases, the rule itself should should cease to have force. Accordingly we find the cases to be numerous in which the Courts have considered the rule in question as inapplicable, and have dispensed with it. One is, where the drawer of a bill has no reason to expect an acceptance or payment by reason of his having no funds in the hands of the drawee; another, where the drawer or indorser has taken the precaution to secure himself, by availing himself for the purpose, of all funds and means of payment in the hands of the acceptor or maker. The reason for these exceptions is that the drawer in the one case, and payee in the other, could not be injured by the non-performance of a ceremony, which it must have been known, would be of no use. The case here seems every way within the exception. The defendant passed off to the plaintiff a bill, which had already been protested and dishonored by all the prior parties to it, he at the same time well knowing their utter worthlessness, and that it had lain dormant, and as a dead letter, in his hands for three years. To apply the general rule to such a state of facts would seem to be nothing more nor less than a gross perversion of it.

And, moreover, the conduct and express admissions of the defendant render it evident, that nothing could have been further from his expectation at the time of passing the draft to the plaintiff, than that the plaintiff should proceed with it as if then originally drawn. He was repeatedly called upon

for payment, in the course of the several years intervening between the passing it to the plaintiff, and the commencement of this suit; and though well knowing he had never been notified of any demand on the acceptor or drawer by the plaintiff, or any one in his behalf, yet it is manifest, that it never occurred to him, that he had any such ground of defence as is now set up. Some two years after the plaintiff took the bill he expressly admitted his liability; and stated, that he expected the plaintiff would get an execution against him for the debt. And often personally, and by his acknowledged agent, Brastow, urged the plaintiff to adopt a composition of ten per centum of the debt in full discharge of it, alleging that he could pay no more; and that a similar proposition had been made to his other creditors. The case differs essentially in this particular from that of *Greely* v. *Hunt,* in which there was not the slightest recognition of indebtedness on the part of the defendant, upon any occasion, or in any manner. Under the circumstances of this case it appears to me that, to allow the defence set up to prevail, would not be in accordance with the principles of justice, or with the spirit and sensible construction of the rules of law.