## BRUCE vs. LYTLE.

W. & O. gave a note dated April 7th, 1849, payable in one year to the defendant or order, which was indorsed by him. In October, 1849, W. & O. failed and made an assignment to the defendant and another person of all their property, for the benefit of creditors; this note being placed among those of the first class. The property assigned was not sufficient to pay all of the first class. At the time of the trial, the matter was in litigation, other creditors having obtained an injunction against the assignees to prevent their paying over the avails of the assigned property, alledging that the assignment was void. On the 9th day of April, 1850, the defendant told the plaintiff, that on the 12th or 13th day of April he would pay and take up the note. On the 15th of April an attempt was made to demand the note of the makers, (who were absent,) and notice of non-payment was given to the defendant. The defendant was the clerk of W. & O. at the time the note was given, and up to the time they failed. *Held*, that the defendant was liable upon the note.

Where the necessary steps to fix an indorser are prevented by some act of the latter, which puts the holder off his guard, demand and notice of dishonor will be excused.

An unconditional promise, with full knowledge of all the facts, is a waiver of demand and notice.

If an indorser make an express promise to pay, demand and notice will be presumed. But this presumption, it seems, will be rebutted by proof that demand was made and notice given five days too late.

*It seems*, an assignment of all the property of the maker to the indorser; or of sufficient to pay the note, and for that purpose, dispenses with demand and notice. Though the rule would appear to be different, in case of an assignment to trustees for that purpose; or of a judgment as indemnity; or an indemnity by way of lien; or a counterbond, without express promise.

An indorser who has received an assignment of property, but not sufficient to pay the note, may insist upon demand and notice of dishonor; but, in most cases, he may be liable *pro tanto* as trustee, though discharged as indorser.

The insolvency of the maker does not excuse demand and notice to the indorser. But demand is unnecessary if the maker abscond.

THIS was a motion to set aside the report of a referee, and judgment thereon. The suit was on a note for $250, made by Woodin & Osborne copartners, payable to Lytle or order in one year, and dated April 7th, 1849. The parties all resided in Salem. On the 27th of October, 1849, Woodin & Osborne being insolvent, made an assignment of all their property to the defendant Lytle and J. K. McFarland, in trust to pay their debts, in the order therein stated; this debt being in the first

class. A witness testified, that on Tuesday the 9th of April, Lytle said to the plaintiff, he would be up the next Friday or Saturday, and pay the note and take it up. And another testified, that on that Saturday, he, the witness, said to Lytle, he thought he was coming up to pay that note ; and Lytle replied, "I'll be up this afternoon or evening, and pay it. I have not now got all the money, but I expect to get some of my brother." And on Monday after, Lytle stated that he was on the way up to pay the note. This witness was joint owner of the note until after it became due ; and the referee thought his evidence not reliable, to establish a promise. W. & O. were merchants in Salem, and Lytle was their only clerk when the assignment was made and during the year previous. The assignment was made on Saturday afternoon or evening, and became publicly known during the day on Monday, notice thereof being posted on the door of the principal hotel that day. On the morning of that day, Woodin left Salem, and had not resided there since, though he was occasionally in that place for short periods. It appeared quite probable from the testimony, that he resided in the city of New-York and in Massachusetts, and also in Columbia county, during the fall and winter after the assignment. Osborne left Salem to reside at Glen's Falls on the 12th day of April. On the 15th day of April, a demand of payment of the note was made, upon the wife of Osborne, at his boarding place, and also of the hotel keeper where Woodin had boarded ; and it not being paid, notice was given to the defendant Lytle. An inventory of the goods was taken after the assignment, and they were valued at $2300 or $2400 ; but they were overvalued, and were sold afterwards for $1800 or $1900. The co-assignee testified that the net proceeds of the assignment would not exceed $2500 or $2600, and the preferred debts were $2800. The defendant offered to show, that a suit had been instituted by some of the creditors of W. & O. against the assignees, to set aside the assignment, and they had been enjoined by the court from disposing of the assigned estate, or its avails. This was objected to by the plaintiffs, and excluded. The referee reported in favor of the plaintiff for the amount of the note.

*C. L. Allen*, for the defendant.

*A. L. McDougall*, for the plaintiff.

*By the Court*, HAND, J.   The defendant Lytle was entitled to judgment, unless the assignment to him, or his promise to pay, renders him liable without demand and notice.   The insolvency of the makers did not excuse want of demand.   (*Chit. on Bills*, 449.   *Story on Bills*, §§ 326, 346.)   Absconding would. (*Taylor* v. *Snyder*, 3 *Denio*, 151.   *Chit. on Bills, Perk. ed.* 354, *n.*   *Story on Bills*, § 327.)   But the proof does not show that either of the makers could be considered as having absconded when the note matured.   Osborne was there, and Woodin had been but a few months before, and was probably then in New-York.   It is quite clear, no demand was made or notice given at the proper time.   None has been proved, and there were both demand and notice five days too late, which, impliedly, negatives a demand before.   *Prima facie* then, the defendant was discharged.   (*Commercial Bank* v. *Hughes*, 17 *Wend.* 99.) Was he liable because he was assignee; or because of his promise ? It has been decided that an assignment of all the property of the maker to the indorser, or of sufficient to pay the note, and for that purpose, dispenses with demand and notice.   (*Corney* v. *Da Costa*, 1 *Esp.* 502.   *Bond* v. *Farnham*, 5 *Mass. Rep.* 170.   *Mechanics' Bank* v. *Griswold*, 7 *Wend.* 165.   *Chit. on Bills*, 368, 473, 489.   *Story on Bills*, § 374.   *Spencer* v. *Harvey*, 17 *Wend.* 489.   1 *Cowen's Tr.* 248.)   Though an assignment to trustees to pay the note and other debts, it is said, is insufficient.   (*Creamer* v. *Perry*, 17 *Pick.* 332.   *And see Story on Bills*, § 316.)   And so of a judgment taken as indemnity, about which there is litigation, no funds or property having come into possession.   (*Spencer* v. *Harvey, supra.*)   It was averred in the first count of the declaration, in *Mechanics' Bank* v. *Griswold*, that the property assigned exceeded the liability ; and in the second, that the makers assigned all their property.   In such cases, the principle of liability has been said to be, that it amounts to an agreement to take up the note.   (2 *Smith's Lead.*

*Cas. Am. notes to Bickerdike v. Bollman, p. 22.*) It may be deemed analogous to the case of a creditor, entitled to all the counter and collateral securities held by a surety; (*Maine v. Harrison*, 1 *Eq. Cas. Abr.* 93, *K.* 5. *Burge on Surety*, 334. *Curtis v. Tylor*, 9 *Paige*, 432. *Ten Eyck v. Holmes*, 3 *Sandf. Ch.* 428. *Clark v. Ely*, 2 *Id.* 166;) or that of a drawer, who has withdrawn all the funds; (*Comm. Bank v. Hughes*, 17 *Wend.* 94. *Birckhead v. Brown*, 2 *Denio*, 375. *Dollfus v. Frosch*, 1 *Id.* 367.) But if the indemnity is only by way of a lien, or by a counter bond, it seems to me there should be an express promise. In this case, the makers assigned all their property. It is said they may have acquired more afterwards, and before the note became due. That is however very improbable, from the circumstances. But the assignment turns out not to be full indemnity; and the defendant offered to show that there was litigation, the validity of the assignment itself being attacked by the less favored creditors. This offer must be taken to be true. If the plaintiffs prevail on account of the assignment, it must be on the ground that the makers have assigned every thing. In *Corney v. Da Costa* sufficient effects were received. And *Bond v. Farnham*, and *Mechanics' Bank v. Griswold* are the leading cases on the other branch of the proposition, that if all is assigned, that is sufficient. It is difficult to see how this can excuse *laches* where, as in this case, there is a deficiency, so long as utter insolvency will not have that effect. And perhaps it is as well in such cases to consider a holder, who had knowledge of the assignment and gave no notice, as having elected to look to the assignment; for the indorser, if assignee, in most cases, is still liable in his character of trustee, to the amount of the funds received; though discharged as indorser. (*Story on Bills*, § 316.) It seems he is entitled to strict notice where he has received funds only sufficient for part payment. (*Id.*)

Again, it is said the promise was a waiver of the demand and notice. An unconditional promise, with full knowledge of all the facts, undoubtedly is so. (*Reynolds v. Douglass*, 12 *Pet.* 505. *Thornton v. Wynn*, 12 *Wheaton*, 183. *Tebbetts v.*

Bruce *v.* Lytle.

*Dowd,* 23 *Wend.* 379.) And since *Tebbetts* v. *Dowd,* where there is an express promise, it may be presumed that there were demand and notice, until the contrary is shown. (*And see Croxon* v. *Mitchell,* 5 *M. & W.* 5 ; *Margetson* v. *Aitken,* 3 *C. & P.* 338 ; *Hicks* v. *Beaufoot,* 4 *Bing. N. C.* 229 ; *Lundy* v. *Robertson,* 7 *East,* 231.) But it seems to me, that presumption is rebutted by showing a demand and notice on the fifth day after the note became due. The case, then, does not stand upon presumption, and there is no waiver, unless it is also shown that the defendant had knowledge at the time he made the promise. (*Tebbetts* v. *Dowd,* 23 *Wend.* 379. *Keeler* v. *Bartine,* 12 *Id.* 119.)

But in another view I think the report must be sustained. If the testimony is true, on the 9th day of April, the day before the note became due, the defendant made an express promise to pay it on the 12th or 13th. On the 13th, he again promised to pay it in the afternoon of the same day ; and on the 15th pretended he was then on his way to pay it. The referee, however, in giving his opinion, doubted the evidence of a promise after the note came to maturity. The witness is not impeached unless by bias, but if the referee did not believe him, the case must rest on the promise made on the 9th of April.

Where the necessary steps to fix an indorser are prevented by some act of the latter which puts the holder off his guard, the holder is excused. (*Leffingwell* v. *White,* 1 *John. Cas.* 99. *Spencer* v. *Harvey,* 17 *Wend.* 491. *Coddington* v. *Davis,* 1 *Comst.* 186 ; *S. C.* 3 *Denio,* 16. *Story on Bills,* § 371. *Burgh* v. *Legge,* 4 *M. & W.* 418. *Leonard* v. *Gary,* 10 *Wend.* 504.) Story says, a mere verbal agreement which may mislead, but does not purport to waive such presentment, will not be available. (*Story on Bills,* § 371.) And he cites *Free* v. *Hawkins,* (1 *Holt's N. P. R.* 550 ; *S. C.* 8 *Taunt.* 92 ;) and *Chitty on Bills,* 446, which relate only to a parol agreement not to put the note in suit. In *Prideaux* v. *Collier,* (2 *Stark. Rep.* 57 ;) *Cayuga Bank* v. *Dill,* (5 *Hill,* 403,) and *Free* v. *Hawkins,* (*supra,*) the holders were not, or had no reason to be, misled. Here the holder knew that the defendant and another held an assignment

Bruce *v.* Lytle.

of all the maker's property; and that the latter were insolvent: and on asking the defendant for payment, the day before the note became due, he received an unqualified promise that it should be paid on the 3d or 4th day from that time. It is said the holder was not misled; for he thought the note became due on the 7th of April. No doubt he did so. But if the defendant had refused to pay it, or even been silent, it is probable the plaintiff would have sought information at once, and taken all necessary measures. Under the circumstances, he had a right to rely upon this unconditional promise; and it may be presumed that he did so. In *Burgh* v. *Legge*, the indorser of two bills, one drawn upon W. and due upon the 4th, the other upon .R. due on the 5th of April, on .the 4th, stated to the holders, that the one drawn on R. would not be paid, as R. had become a bankrupt; and that the other would not be paid, as he had some pictures as security, to sell and take it up; and that W. had no other means of raising the money, and it was not worth while to trouble him with a two penny post letter to give him notice; it was not worth the money: and he would bring the plaintiff some money on the following Monday in part payment of the two bills. The plaintiff failed because he had averred notice, and the court held there was no evidence of that; but Parke, B. said, this was good evidence of a dispensation with notice. In *Spencer* v. *Harvey*, an indorser, a few days before the note became due, wrote to the holders that the makers had failed; that the first indorser, who owned a farm, had given a judgment to secure the payment of the note, but the farm could not be sold till such a time; that no additional security could be obtained by prosecuting the note; and he had made no calculations for raising the money, and was therefore under the necessity of asking indulgence until the real estate could be sold. If he had received an assignment of all the maker's property, and promised, the day before it became due, to pay the note, the case would have been stronger.

                                                    Judgment affirmed.

[SARATOGA GENERAL TERM, January 5, 1852. *Willard, Hand* and *Cady,* Justices.]