NEW-YORK,
May, 1830.

Moore
v.
Hitchcock.

---

## MOORE *vs.* HITCHCOCK.

An artisan has a lien upon the article manufactured by him until he is paid for his labor, or parts with the possession pursuant to the terms of his agreement: so held in the case of a *brick-maker*, who manufactured a quantity of brick, on a brick-yard furnished by another, together with wood and all other necessaries to carry on the work: and who agreed to pay him $1,75 for every 1000 brick made and shipped, on the return of the vessel in which the same were carried to market.

Where in such case the brick were sold as the property of the employer, under an execution against him, it was held that an action of *trover* lay by the brick-maker against the purchaser, who removed the same: the purchaser being, however, allowed to shew the state of the accounts between the employer and the brick-maker, and the latter being permitted to recover only the amount of his lien upon the brick *taken* by the purchaser, and not the amount of his lien upon the whole quantity manufactured by him, or according to the state of the accounts between him and his employer.

The admissions of a party under a misapprehension of his legal rights and liabilities do not affect his interests.

A person having no *fixed legal interest* in the event of a cause is a competent witness, although he declares himself *bound, in honor,* to share in the loss which may be incurred by the party calling him.

THIS was an action of *trover*, tried at the Albany circuit in February, 1829, before the Hon. WILLIAM A. DUER, then one of the circuit judges.

In April, 1826, a contract was entered into between the plaintiff and one Green, by which it was agreed that Green

should furnish Moore with a brick-yard in the village of Castleton, and supply him with wood for burning brick and with teams, machinery and tools necessary for the making of brick; that Moore should make as many thousand brick as the season would permit, and deliver them on board a vessel; and that Green should pay to Moore $1,75 for every thousand brick so made and shipped as soon as the vessel or vessels in which the brick were shipped should return from New-York. In pursuance of this agreement, Moore went on and manufactured a large quantity of brick, which, in the summer of 1826, was sold under an execution against Green, and purchased in by the defendant, the plaintiff forbidding the sale. The whole quantity manufactured was upwards of 300,000; but the quantity purchased and removed by the defendant, probably did not exceed 120,-000. The plaintiff here rested, and the defendant moved for a nonsuit, which was denied.

On the part of the defendant, it appeared that at the time of the purchase by the defendant, Green had paid the plaintiff under the contract $265,40, and it was attempted to be shewn that he had paid him in addition upwards of $300, (which would probably have more than extinguished his lien upon the brick) in the following manner: in the spring of 1826, Moore obtained merchandize on credit, from a firm of the name of Livingston, Hurd & Co., of which the defendant was a partner to the amount of $85, which was charged to him, but which Green agreed to pay if Moore did not; and upon the same terms obtained goods of a Mr. Buckman to the amount of $143,67. In 1827, Moore gave his notes to Buckman for the amount he owed him, which notes since the commencement of this suit, were delivered to Green, and the amount of them charged to him. It was also proved that Moore had admitted that Green had paid Livingston, Hurd & Co. the amount of their account against him, and had become accountable to Buckman for the demand due to him, both of which he said were to apply towards satisfaction of his claims for the making of the brick, but Green himself, though sworn as a witness, did not testify that he had paid either of those demands, his evidence only going to shew the

receiving of Moore's notes of Buckman, and the charging of the amount to him. In addition to these two items, Green testified to several small charges he had against Moore. In the fall of 1826, Green obtained a discharge as an insolvent debtor, and in the account of his creditors, he put down Moore as his creditor to the amount of $150, and the charges against Moore relative to the demands of Buckman, and Livingston, Hurd & Co. were made subsequent to his obtaining his discharge. After the purchase of the brick by the defendant at the sheriff's sale, the plaintiff assisted in the removal of them from the brick-yard to a vessel in which the plaintiff transported them to New-York; but it was shewn that the plaintiff was very poor, and that after the sale of the brick, he laboured for the plaintiff for hire, and that the principal part of the brick were removed before he began to assist.

One Orville Hurd was offered as a witness on the part of the defendant; he was objected to as interested, and on his examination, it appeared that he was a co-plaintiff with one Abiel Buckman in the judgment on which the execution issued by virtue of which the property in question was sold; they were not partners in business nor was the judgment obtained on a joint demand, but confessed on separate demands. He was present at the sale, and understood that Buckman had indemnified the sheriff; he had not been consulted by Buckman in relation to the indemnity, nor had he joined in it, nor had he individually engaged to indemnify the sheriff, but he considered himself in honor bound, should the sheriff be damnified, to contribute with Buckman to his indemnity. The judge decided that he was incompetent to testify as a witness.

The evidence being closed, the judge charged the jury that an artisan is entitled to a lien upon the articles manufactured by him; that consequently the plaintiff in this case had a lien upon the brick in question; that his assisting in the removal of the brick was no waiver of the lien under the circumstances of the case; that the defendant was entitled to the benefit of any payment made by Green to the plaintiff towards manufacturing the brick previous to the conver-

sion, which he directed them to ascertain and deduct from <span style="float:right">NEW-YORK,</span>
the plaintiff's lien ; that the delivery of the plaintiff's notes by <span style="float:right">May, 1830.</span>
Buckman to Green was not a payment by Green to Moore, <span style="float:right">Moore</span>
inasmuch as Moore still remained indebted to Buckman ; and <span style="float:right">v.</span>
that the admissions of the plaintiff as to the payment of the <span style="float:right">Hitchock.</span>
demand of Livingston, Hurd & Co. were not conclusive, as
Green had not testified to its payment. The jury found a
verdict for the plaintiff for $329,14. A motion was made to
set aside the verdict.

*J. Koon & H. P. Hunt*, for the defendant.

*A. Vanderpoel*, for the plaintiff.

*By the Court*, SAVAGE Ch. J. The first point made by the
defendant on which he relies for a new trial is, that the judge
ought to have nonsuited the plaintiff on the ground that by
the contract he had no lien on the brick. This point has
been already considered and decided by this court, and may
therefore be considered at rest. This cause was tried in
February, 1827 ; the judge nonsuited the plaintiff, which non-
suit was set aside by this court on the ground that by the
contract between the plaintiff and Green, the plaintiff was
entitled to retain possession of the brick until he parted with
it by delivering them on board the vessels. We then said
that such was the agreement, and that neither Green nor any
one under him had authority to prescribe a different course
without the plaintiff's consent, and that consequently the
plaintiff's right to the possession continued until he was com-
pensated for his services at the rate specified in the contract,
or until he delivered the brick on board the vessels. We also
held that the defendant standing in the place of Green, had no
greater authority than Green himself.

On further reflection and examination, I am satisfied that
that decision was correct. Each of the parties by the con-
tract was to contribute towards making the brick, but they
were not partners. Green furnished the materials, the clay
and the wood ; Moore made the brick, and until he delivered
them on board the vessel, Green had no legal right to the
possession ; after their delivery to Green, Moore had no

further claim upon them, but upon Green or his assignee. Suppose Green, after the brick were moulded but not burnt, had destroyed them, would he not have been a trespasser ? or had he put out the fires when burning, or taken the brick after burnt and destroyed them ? By the contract he had no right to intermeddle with the brick until they were delivered to him on board the vessels, unless indeed the plaintiff had refused to deliver them according to the contract.

Upon general principles also I think the judge was correct in saying, that an artisan has a lien upon the article made by him till he is paid for his labor. If a man send cloth to a tailor, or leather to a shoemaker, for the purpose of having clothes or shoes made, the mechanic may retain the manufactured article till he is paid for his labor. No good reason can be shewn why a brick maker, who receives the materials in the manner in which the plaintiff did, should not be protected by the same principle. By the contract in question he seems to have agreed to waive his lien as against Green, and was not to receive his pay till the vessel which carried the brick to market should return. This was a personal credit to Green, founded on the confidence reposed in him; but had Green, assigned his contract to a pauper, or to a man notoriously insolvent, or whose bad character justified the presumption that he would never pay the plaintiff, would he under that contract have been bound to deliver the brick when there was no prospect of being remunerated ? I think not. But it is unnecessary to discuss the question of his liability on his contract; he has never violated it; he was not called on to perform it. The defendant seems to have acted under the impression, that by the sheriff's sale he had the whole title to the brick. In this he was certainly mistaken.

The question next in order is the competency of the witness Hurd. He was a plaintiff in the judgment, by virtue of which the property in question was sold. He did not agree to indemnify the sheriff, but his co-plaintiff did, and he felt himself bound in honor to contribute to the indemnity of the sheriff. The reason why a person interested is incompetent is a supposed want of integrity ; that his interest creates a

bias on his mind which will induce him to testify incorrectly
to benefit himself. To ascertain whether a witness is inter-
ested, this court, in *Van Ness* v. *Terhune*, (3 Johns. Cas.
82, 3,) adopted the rule that " If a witness will not gain or
lose by the event of the cause, or if the verdict cannot be
given in evidence for or against him in another suit, the ob-
jection goes to his credit only, and not to his competen-
cy." A variety of subsequent cases say that there must be
a *fixed legal interest* to render a witness incompetent. A
witness, however, may feel an interest where there is in
truth no legal interest. In such cases there has been a
contrariety of opinions upon the question whether he ought
to be sworn. If he thinks himself interested, it has been
said, there is the same reason to suspect bias on the part of
the witness as if his interest was real. This court has estab-
lished a rule for such cases in *The Trustees of Lansingburgh*
v. *Willard*, (8 Johns. R. 428.) They there said, " To pre-
vent fraud and trick, the following appears to be a salutary
distinction : If a witness be called, and declares himself in-
terested on the side of the party who calls him, and his inter-
est be so circumstanced that he cannot be released by the
party calling him, in such case he ought not to be sworn,
though in strictness he is not interested ; but if his ideal in-
terest be against the party calling him, and he will run the
risk of the bias on the mind of the witness, then he ought to
be sworn." But where a witness has in fact no legal fixed
interest in the event, and does not think himself legally in-
terested, but feels himself obligated in honour to share in the
loss, if any, in such case it has been decided, in *Gilpin* v.
*Vincent*, (9 Johns. R. 220,) that he is competent and ought
to be sworn. The witness had no fixed interest in the event
of this suit. He was called to support the regularity of the
sheriff's sale. If that was irregular, the sheriff was a tres-
passer, and may be made liable as such. The sheriff has
his remedy against Buckman, and the witness thought him-
self bound—bound in honor, but not legally—to share the
loss with Buckman. He was, therefore within the rules

NEW-YORK,
May, 1830.

Moore
v.
Hitchcock.

above cited, a competent witness, and should have been sworn.

The only remaining question respects the extent of the plaintiff's interest. The defendant attempted to shew that the plaintiff had been compensated for his lien or interest in the brick by Green; much testimony was introduced on that subject, and it appeared by the testimony of Green, that when Moore left off work, he examined his, (Green's) account against him, and admitted the items and charges to be correct; it amounted to $265,40. It also appeared that subsequent charges had been made in Green's book by Buckman with Green's consent, which made the account $582,57. The two important items which swell this account are demands, one in favor of Buckman and the other in favor of Livingston, Hurd & Co. When the plaintiff went to work on the brick-yard in Castleton he was poor and wanted credit at the stores of the persons above named; they refused the credit unless Green, who was then in good credit, would become responsible; Green agreed verbally to be responsible, to pay for the goods if Moore did not. The goods were charged to Moore who never paid for them. Green obtained the benefit of the insolvent act in November, 1826, and subsequently the goods were charged to him; and then they were charged in his account against the plaintiff. Green had not paid these accounts, and the plaintiff still remains liable for them. It was proved that the plaintiff had given his note to Buckman for $143,67, which he had agreed should be considered as a payment to him by Green; and he had also admitted to the defendant in the presence of his clerk, that the other account for goods to Livingston, Hurd & Co. of $85, of which firm the defendant was a partner, should be considered as a payment by Green. It appears that the plaintiff admitted what the defendant wished him to admit, and one of his admissions was part of a conversation about the settlement of this suit. And in all instances a witness was cautioned beforehand, to observe and recollect what was admitted. It happens, however, that his admissions against himself were not correct. He was mistaken in the first place as to his rights under the written contract, sup-

posing that he had no lien upon the brick, and he was mis-
taken also in supposing that a charge on a merchant's books
against Green operated as payment by Green to him to
that amount. One of these merchants took his note, which
Green never saw till after the commencement of this suit.
At that time the plaintiff was liable upon it to Buckman;
and to Livingston, Hurd & Co. he was then and is still liable;
and it does not appear that when Green was charged with
Moore's debts, that Moore had a corresponding credit.
There is no question as to Green's liability for the articles
delivered Moore; but Green's right to charge them is de-
nied until he shall have paid for them, or shall have dis-
charged Moore's liability; then he might charge for them or
for the money paid. The judge charged the jury that
the defendant was entitled to any fair account of Green
against the plaintiff, but that the notes delivered by Buckman
to Green could not be considered a payment to Moore, as
they had been delivered to Green after the commencement
of this suit and had never been paid by him; that the account
of Livingston & Co. had never been paid by Green, and
that the plaintiff's admissions were not satisfactory. This
charge was certainly correct.

It seems the jury have considered the whole account be-
tween the plaintiff and Green, and have given their verdict
against Hitchcock for the balance due by Green. This can-
not be right. It is true that the defendant stands in the place
of Green as to the title of the property purchased at sheriff's
sale; and the evidence would have been altogether inadmis-
sible, as to the state of the accounts between the plaintiff and
Green in any other point of view, only to extinguish the
plaintiff's lien upon the property purchased by the defen-
dant. I have before endeavoured to shew that by the terms
of the contract, the plaintiff lost his lien upon the brick when
he delivered them on board the vessels, and that afterwards
he had no security but Green's responsibility. If I succeed-
ed in that, then the extent of the defendant's liability is the
amount of the plaintiff's lien upon the property which he re-
moved.

Dutcher, one of the witnesses, says that the brick sold by the sheriff consisted of 13 or 14 arches of ten or eleven thousand each. Green says there were but nine arches when sold. A medium, therefore, will be eleven arches; and it appears that many of the brick were damaged, so that ten thousand to an arch will be a fair estimate. The defendant, therefore, in the absence of positive proof, ought not to be charged with the purchase of more than one hundred and twenty thousand bricks, on which the plaintiff's claim is $210; the interest on that sum up to May term, 1830, is $52,67, amounting to $262,67, which is all the plaintiff is legally entitled to recover. In trover, where the plaintiff does not recover the whole value of the property converted, the propriety of going into the original accounts has been doubted, (5 Bin. 457,) but in a case like this it seems to me indispensable. Under such circumstances, however, the above case shews that the amount of the recovery should be only the extent of the interest of the plaintiff in the property. The defendant in this case owns the whole property in the brick in question except what interest the plaintiff has. It is surely proper, therefore, that the plaintiff should recover against the defendant only the amount of his interest in the property which the defendant claims, not the amount of his interest in property which the defendant does not claim, but which had been delivered to Green upon the contract, upon Green's sole responsibility.

I am of opinion, therefore, that a new trial be granted.