### WHEELER and others *vs.* M'FARLAND.

Where it is agreed that the *owners of a saw-mill* shall have a *lien* for their charges in sawing logs into boards, that the boards shall be removed a short distance from their premises, but that the lien shall continue until payment, and the boards are sawed and piled accordingly a short distance from the mill, the lien of the owners of the mill is as perfect as if the boards were in their mill-yard ; the possession of the owner of the boards is their possession.

And where, under such circumstances, a sheriff, by virtue of an execution against the owner of the boards, *levied* upon the boards after being apprized of the lien, and advertised the *whole property*, and not merely *the right* of the defendant to the property *subject to the lien*, IT WAS HELD, that the parties entitled to the lien might sue out a *replevin.*

It seems that the *interest* of the defendant *subject to the lien* might have been *levied upon* and sold, without subjecting the officer to responsibility.

ERROR from the Washington common pleas. This was an action of *replevin* brought by the plaintiffs for a quantity of boards taken by one *Eldridge,* a deputy of the defendant, sheriff of the county of Washington, by virtue of an execution against one *Vaughan.* The plaintiffs had sawed a quantity of logs for Vaughan into boards, under an ageeement that they

should have a *lien* for their charges of sawing upon the boards, which should be drawn from the mill and piled upon the canal bank a short distance from the mill, the lien to remain until the plaintiffs were paid. The charges for sawing amounted to $327,40. After the boards were all sawed, drawn and piled at the place agreed on, which place Vaughan procured permission to occupy, Vaughan took a boat load to market, promising to pay the avails to the plaintiffs, which, however, he did not do, and subsequently took away another quantity without permission. In September, 1828, the boards which were left were levied upon by Eldridge, by virtue of an execution against Vaughan; Eldridge was informed by an agent of the plaintiffs of their claim, and told that if he would pay the amount due to the plaintiffs, they would relinquish their claim. The quantity of boards was about 8000, and their value was not sufficient to pay the plaintiffs' claim; Eldridge refused to pay it, and advertised *the boards*, that is, he advertised that he would sell between *eight* and *ten thousand* boards by virtue of the execution, at public auction on 11th October then next; on which day he appeared at the appointed place to sell the boards, when the replevin was executed. The plaintiffs having rested, the counsel for the defendant insisted that the evidence was not sufficient to entile the plaintiffs to recover, and moved the court to nonsuit the plaintiffs upon the following grounds: 1. That the property was taken by the deputy in the possession of the defendant in the execution; 2. That the sheriff was not liable for the acts of his deputy; 3. That the plaintiffs had not possession of the *place* where the boards were piled; 4. That the plaintiffs had parted with the possession of the boards and thereby lost their lien; and 5. That the action was prematurely brought. The court decided that the evidence was not sufficient to maintain the action, and *nonsuited* the plaintiffs, who excepted to the decision and sued out a writ of error.

*S. Stevens*, for plaintiffs. The plaintiffs may be considered as absolute owners, as their lien amounts to more than the value of the property; at all events, they have a special property, which entitles them to maintain the action. *Gilb. on*

NEW-YORK,<br>May, 1833.<br>Wheeler<br>v.<br>McFarland.

NEW-YORK, *Repl.* 87. *Comyn's Dig. tit. Replevin, A. Bacon's Abr. tit. Re-*
May, 1833. *plevin F .20 Johns. R.* 467. 4 *Burr.* 2221. *Whitaker on Liens,*
Wheeler 36. *Esp. N. P.* 191. The plaintiffs, in construction of law,
v. were in possession of the boards, having the power at any mo-
McFarland. ment to reduce them to possession, and under the circumstan-
ces of the case, may be considered in possession of the *place*
where the boards were piled; it was in their possession *pro hac
vice.* 9 *Cowen,* 263. 3 *Wendell,* 280. The *levy* was enough to sub-
ject the defendant, who is accountable for the acts of his depu-
ty, to an action of trespass or trover, and if so, replevin lies.
6 *Wendell,* 212, 360. 10 *Johns. R.* 175. 7 *id.* 258. 8 *Wendell,*
613. 3 *id.* 242. If the sheriff wishes to avoid responsibility, he
must levy specially, that is, on the interest of the party, subject
to the lien which is claimed.

*W. Hay, jun. & D. Russell,* for the defendant. By parting
with the property, the plaintiffs lost their lien. The policy of
the law demands that a party setting up a lien, shall retain
possession as an evidence of his right. 12 *Petersdorff,* 20. 1 *East,*
14. Here the possession was in Vaughan; the boards were in
a place of which he alone had the control, and by no construc-
tion of law could the plaintiffs be deemed in possession; but if
the lien as between the parties might be held to extend to that
place, it could not be so considered as it respects third persons.
At the most the plaintiffs had but a qualified property in the
boards, and can a party having a qualified property in a thing
sue a sheriff for merely *making a levy* by virtue of an execu-
tion against him who has the general property, especially
when the property levied on is in the actual possession of the
general owner? Allowing that the property could not be re-
moved until the lien was satisfied, could not the right and title
of the general owner be sold subject to the lien? and if so, the
levy was proper and necessary. Cannot the right of a pledg-
or be sold under an execution, subject to the claims of the
pledgee? The mere levy was not inconsistent with the rights
of the plaintiffs, and if a sale had taken place, it would have
been in subordination to those rights, as in the case of a levy up-
on and sale of the interest of one of several partners in a mer-
cantile firm. Here no possession was taken of the property or

dominion exercised over it in exclusion or in defiance of the
rights of the plaintiff. 4 *Wendell*, 292. 3 *id.* 242. 7 *Cowen*, 735.

*By the Court,* SAVAGE, Ch. J. It does not appear what
opinion was expressed by the court upon the several points
raised for their decision; the inference would seem to be
that they were all decided in favor of the defendant. An
opinion will therefore be proper to be expressed upon them,
in the order in which they were taken: 1. Where the ac-
tion of replevin is brought by any person other than the
defendant in the execution upon which the levy was made,
the objection above taken is not tenable. This has been
so decided, and the subject discussed in *Clark* v. *Skinner,*
20 *Johns. R.* 465, and *Dunham* v. *Wyckoff,* 3 *Wendell,* 280,
and the cases there cited. 2. The liability of the sheriff for
the acts of his deputy, when he acts *colore officii,* is too well
settled to require the citation of an authority to support it.
3. The boards were in possession of the plaintiffs by agree-
ment of Vaughan; as against him the plaintiffs were at lib-
erty to resume actual possession, and remove the boards to
their yard. Their rights were the same as if they paid the
rent of the ground on which the boards were piled, or as if pi-
led in their mill yard. The piling the boards on the canal
bank, a short distance from the mill, was an arrangement for
the mutual convenience of the parties to it, and did not affect
their rights in any degree. 4. From what has been said up-
on the preceding points the fourth point is also decided. In
law and fact also, the possession was in the plaintiffs; Vaugh-
an had no right to remove the boards nor to exercise acts of
ownership over them until the plaintiffs were paid. 5. Was
the action prematurely brought? The defendant contends
that he had a right to all the interest of Vaughan in the prop-
erty, subject to the lien of the plaintiffs. It seems to me un-
necessary in this case to discuss the general question wheth-
er a reversionary interest of one person in personal property
may be sold by the sheriff while another person has the pos-
sessory interest; for it appears in the bill of exceptions that the
whole value of the property levied on, was not equal to the

NEW-YORK,
May, 1833.

Wheeler
v.
McFarland.

plaintiffs' claim for sawing against Vaughan, and which was a lien upon this property ; Vaughan, therefore, cannot be said to have any interest in it. The defendant by his advertise- ment offered the whole property ; he did not propose to sell subject to the plaintiffs' claim, but in defiance of it. It has been decided in a variety of cases, that where a person is in possession of personal property, and has a right to that posses- sion for a time certain, the interest of such possessor may be sold. Such is the case of a lessee or possibly a mortgagor in possession before forfeiture. 4 *Taunt.* 489. 7 *id.* 11. 2 *Cow- en,* 543. 3 *Wendell,* 499. That the interest of Vaughan might have been sold subject to the plaintiffs' lien, I am not disposed to deny. In the case of *Moore* v. *Hitchcock,* 4 *Wen- dell,* 292, the interest of the general owner of a brick kiln was sold subject to the lien of the brick maker of $1,75 per thou- sand for making them ; and no question was raised as to the right of the defendant to the brick, he being the purchaser at heriff's sale of the interest of the original owner. The facts in this case, however, do not present that question ; nor was that the point raised in the court below ; it was that the action was prematurely brought ; that is, that the *mere levy* without a sale or removal of the goods, was not sufficient to justify the bringing an action of replevin. All the cases in this court support the doctrine that replevin lies in all cases where trespass *de bonis asportatis* will lie. 7 *Johns. R.* 142. 20 *id.* 467. 3 *Wendell,* 281. And it has often been held that a levy, where it is not authorized by law, is a trespass ; it is not necessary that there should be a removal of the prop- erty ; any exercise of control over the property of another is a trespass. Where an officer levies on property and leaves it in possession of the defendant in the execution, the possession acquired by the levy is sufficient to sustain trespass or trover by the officer against a stranger. 6 *Johns. R.* 196. 2 *Saund.* 47. After seizure under the execution, the goods are, in judgment of law, in possession of the officer, and the person with whom they are left is his servant. In *Reynolds* v. *Shuler, 5 Cowen, 323,* a bailiff who distrained and sold the plaintiff's goods without removing them, was held guilty of a conversion. So a levy upon goods by virtue of an ex-

ecution, though there be no removal of them, constitutes the officer a trespasser, if the levy is not justified. 7 *Cowen*, 735. *Ingersoll* v. *Van Bokkelin*, 7 *Cowen*, 670, proves that he who has a lien upon goods, has such a special property in them as to support trover against any one who converts them by authority of the general owner; of course, the action would lie against the general owner himself. The same doctrine, as to the liability of any person assuming control over the property of another, is recognized and asserted in *Lewis* v. *Palmer*, 6 *Wendell*, 368, where it was held that the act of selling a stack of hay, though it was not removed, was a trespass; and in *Philips* v. *Hall*, 8 *Wendell*, 613, where it is said the levy by the sheriff and taking a receiptor changed the possession of the goods in contemplation of law. It seems clear, therefore, that the defendant had done enough to make himself liable in trespass, if the plaintiffs were the owners of the boards.

On the whole case, it satisfactorily appears that the plaintiffs, having a lien on the boards, had such a special property in them as to authorize an action to be brought by them; and that the defendant, by the levy, had, in contemplation of law, dispossessed the plaintiffs of their property, and therefore the action of replevin was well brought.

The judgment of the court below should be reversed, with costs to abide the event; *venire de novo* to be awarded by Washington common pleas.