Weaver *v.* Darby.

------

## WEAVER *vs.* DARBY.

An agreement was made, between B. and D. by which B. was to furnish the money to purchase, in his name, 15,000 or 20,000 feet of oak timber from different persons, the timber to be selected in the woods, standing, by D. and to be cut, hewn, rafted and delivered by him to B., at Troy, for which he was to receive ten and a half cents per cubic foot. *Held* that B. had the general property in timber got out under this contract and which D. was engaged in transporting to Troy; but that he had no right to the possession thereof. That as between B. and D. the latter had a special property in the timber, accompanied by the right of possession. And that D.'s interest was the subject of levy and sale under execution against him.

*Held, also,* that to an action of replevin, brought against D. by the purchaser at a sale under execution, proof a general property in B. at the time of the levy was not a good defense.

That the plaintiff in such suit was entitled to recover, he having the right of possession, as against D., and the right of property united. But that as the title he had acquired was a mere special property, he was only entitled to a verdict finding the property in him, and to an assessment of the value of the timber at the amount of the value of D.'s special property therein, viz. ten and a half cents per cubic foot, deducting therefrom the expense of transporting the timber to Troy.

And it appearing from the undisputed testimony in the case that D. had an interest in the timber, at the time of the levy, subject to levy and sale upon execution; *it was held* that it was not erroneous for the judge to take the case from the jury, and dispose of it as a question of law.

REPLEVIN for thirty sticks of oak timber, about 1300 cubic feet. The plaintiff claimed title to the timber by a purchase thereof, at a sheriff's sale, under an execution issued upon a judgment against the defendant and another. At the time of the levy the timber was in the defendant's possession, on the bank of the canal, near Seneca Falls, having been, just before then, cut down, hewed and drawn there by the defendant. The sheriff advertised and sold the defendant's interest in the timber to the plaintiff, who owned the judgment. The defendant set up as a defense that the timber, at the time of such levy thereon and sale thereof, was the property of Peter H. Bitley and not of the defendant. To maintain this defense, the defendant proved that he had a contract with Mr. Bitley by which he, the defendant, had agreed to cut, hew, draw, raft, run to Troy, and there deliver to Bitley from 15,000 to 20,000 cubic feet of white oak timber, at ten and a half cents per cubic foot. Bitley was to buy and pay for the timber standing. Bitley agreed with the owner for this timber while standing, and the defendant, under his contract, cut, hewed and drawed it to the canal (where it was levied on by the sheriff) for the purpose of there rafting it and running it to Troy, and there to deliver it to Bitley for the compensation agreed on, and pursuant to said agreement. After the timber was cut, Bitley paid the owner of it the price agreed upon. Bitley paid the defendant in advance upon his whole contract with him, $125. This proof was uncontradicted, and in fact there was no conflict of evidence, except perhaps in respect to some declarations of the defendant, alleged to have been made to the sheriff and to the plaintiff, which were claimed to be altonether immaterial. Upon this state of facts, with some proof as to the quantity and value of the timber, the court directed the jury to find a verdict for the plaintiff, and to assess the value of the defendant's interest at $174.98. The jury rendered a verdict accordingly. The defendant thereupon moved the court for a new trial, upon a case containing exceptions,

which motion was denied and the defendant thereupon appealed to the general term from the order entered on the decision of that motion.

*C. G. Judd,* for the appellant.

*S. H. Welles,* for the respondent.

*By the Court,* E. DARWIN SMITH, J. As this case is presented to us, I was inclined to think, upon the argument, that there should be a new trial, on the ground that the case should have been submitted to the jury. The requests to charge, the charge as stated, and the exceptions to the charge are all out of place in the case. The cause was not submitted to the jury, and there could therefore have been no charge, or exceptions to the charge or requests to charge. The circuit judge took the case from the jury, and directed a verdict for the plaintiff, and a single exception to such disposition of the cause was all that was necessary to raise every question essential for the purpose of the review of his decision. What is stated by way of a charge may have been the reasons assigned by the judge for the decision then made in disposing of the cause. The action being replevin, presented a single issue in respect to the title to the timber in question. It was levied upon by virtue of an execution against the defendant, was at the time in his actual possession, and as some of the proof tended to show, was at the time claimed by him as his property. The case was disposed of upon the view, that upon the undisputed testimony in the case he had an interest in the timber, subject to levy and sale upon execution. It appears from the testimony of the witness Bitley, who it was claimed was the real owner of the timber in question, that the defendant, before the 13th of December, 1862, had been engaged in cutting and getting out timber on different lots in Seneca county, and on that day he applied to Bitley to make an arrangement for him, Darby, to cut 15 or 20,000 feet of timber for him, the witness, and deliver

it at Troy; and that at or about that time they made an agreement that the defendant should go on as agent for Bitley to buy the timber standing, for which he, Bitley, was to pay, and Darby. was to cut, hew, raft and deliver it to him, Bitley, at Troy at ten and a half cents per foot; and that the thirty sticks of timber in question were got out under this arrangement. There was no written memorandum of the bargain, but as Bitley-advanced money to the defendant, he gave receipts therefor, which stated what he was to do, in writing, one of which is as follows: "Rec'd Brockport 15th Dec. 1862, of Peter H. Bitley one hundred and twenty-five dollars to apply on getting out, drawing and rafting and delivering at Troy from 15,000 to 20,000 feet of white oak timber, from the lands of H. Powers, Jacob Frantz and George Backover, at ten and a half cents per cubic foot.

$125.          (Signed)          MORGAN DARBY."

The timber in question was not purchased of either of the persons named in said receipt, but it was in fact paid for by the defendant with money advanced to him by Bitley, who claimed it under the original contract. In taking the case from the jury, the circuit judge must have assumed that they would find that the defendant was the agent of Bitley in the purchase of the timber in question, in accordance with the testimony of Bitley and the defendant. There was really no conflict of testimony on this point. The argument of the defendant's counsel here is that this question should have been submitted to the jury, and this is the chief error complained of. But as there was really no substantial conflict in the evidence, it was not error to take the case from the jury, upon that view of the case and upon the assumption that the facts were as stated by the witness Bitley, which was the most favorable view of them for the defendant that could have been taken by the jury upon any submission of the case to them. And such was the view of the case taken by the circuit judge in what is erroneously called a charge in the case before us. The counsel for the defendant claims

Weaver *v.* Darby.

that the defendant was the agent of the witness Bitley for the purchase of the timber, and that the title was in Bitley. The witness Bitley states the facts, and shows in what sense and to what extent the defendant was his agent. He was to furnish money to Darby to buy the timber. It was to be bought there in his name, and Darby was to get it out and transport it to Troy, for which he was to receive ten and a half cents per cubic foot. Upon this statement of the facts, Bitley clearly had the general property in the timber, but I think he had not the entire title to it. Darby was to select it in the woods standing, was to bargain for it, cut it, hew it, raft it and deliver it at Troy. This gave him, I think, a special property in the timber. When it was levied upon by the sheriff it was in his possession on the canal, and he was engaged in transporting it to Troy. Bitley had no right to the possession of it at that time. He could not have taken it from Darby, upon any pretense. Bitley's rights in respect to it are certainly not greater than they would have been if he had himself purchased and cut the timber, and after it was cut he had employed Darby to hew it and raft it to Troy, and Darby had partly executed his contract at the time of the levy. In such case, clearly, the general property would have been in Bitley. It would be like the case of the brick manufactured for the owner of the yard, he finding the materials and the manufacturer finding nothing but the labor, in which it was held that the manufacturer had a property in the brick; (*See Moore* v. *Hitchcock,* 4 *Wend.* 292;) or like the case of *Eaton* v. *Lynd,* (15 *Mass. Rep.* 242,) where yarn was delivered to a man to be woven into cloth upon commission and he relet the job. It was held he had a special property in the cloth, so that he could maintain trover for it. In the case of *Mount* v. *Williams,* (11 *Wend.* 78,) where logs were left with a sawyer to be manufactured into boards, at Whitehall, and the same were to be delivered at Troy, it was held that the manufacturer had a lien upon the timber and a special property in it till paid for sawing and trans-

porting. (*And see also 4 Carr. & Payne,* 15 ; 2 *Kent.* 634.)
It is a settled rule that bailees for hire of labor and services
have a special property in the thing about which labor and
services are performed. (*Story on Bailments,* § 422. *Ed-
wards on Bailm.* 353. 8 *Greenl.* 101; *and Morgan* v.
*Congdon,* 4 *Conn. Rep.* 552. 1 *Denio,* 168.) It follows from
these views that it was not error in the circuit judge to take
the case from the jury, and that there was no disputed ques-
tion of fact which could have been found in favor of the
defendant more favorably than the view assumed by the judge
in disposing of the case. The law of the case, as respects
the rights of Bitley and the defendant, as between themselves,
was correctly stated by the judge in what is called a charge.
The defendant had a special property in the timber, with the
right of possession, and Bitley had the general property, to
become absolute on the delivery of the timber at Troy. It
remains only to see if, upon this view of the rights of the
parties, the case was properly disposed of at the circuit.. The
action is replevin. The plaintiff had· acquired the title of
the defendant in the timber by levy and sale, the property
being at the time of the levy, and at the time of the com-
mencement of this suit, in the actual possession of the defend-
ant. The levy úpon the property in the defendant's posses-
sion, and sale, *prima facie* divested the defendant of title
and transferred all his title to the plaintiff. And as between
the parties to the action, the plaintiff had the clear right to
recover. He had the right of possession, as against the de-
fendant, and the right of property united. But the defendant
sets up by answer the title of Bitley, and claims to defeat
the action upon such title. If it was admissible for him to set
up title in a third person, as against the plaintiff, and to hold
possession under such title, he must clearly set up a good
possessory title. Very clearly, I think, he does not set up
such a title. At the time of the levy on this timber by the
sheriff of Seneca, Bitley had no right of possession in it or
to it. He could not have taken it from the defendant. He

Weaver *v.* Darby.

had no color of right to reduce it to immediate actual possession. He was entitled to have it delivered to him at Troy, but no certain time was fixed in the contract between him and Darby for such delivery, and as between them the defendant had the clear and unqualified right of possession as well as a special property in the timber at the time of such levy. The proof of a general property in Bitley at the time of such levy was not, therefore, a good defense to the suit, and the rights of the parties must be determined as they stood at the time of the levy. The plaintiff was therefore clearly entitled to a verdict finding the title of the property in him, and to be restored to the possession. But as the title he had acquired, as we have seen, was a mere special property, he was only entitled to a verdict finding the property in him and an assessment of the value of the timber at the amount of the value of his special property therein. (*Dows* v. *Greene*, 24 *N. Y. Rep.* 646.) This is precisely what the judge held at the circuit, but it appears that the principle was not correctly carried out, and the value of the special property was estimated upon an erroneous basis. The counsel for the parties, after the judge had correctly stated the law applicable to the case, it seems, proceeded by agreement to adjust the relative rights of the plaintiff and Bitley in the timber, and erroneously allowed to the plaintiff, as the value of his special property, the whole value of the timber, deducting the cost of the timber standing. The judge had stated, as the rule doubtless is, that Bitley was entitled to the timber *at Troy*, at whatever might be its value there, deducting ten and a half cents for the services of the defendant in getting out and transporting the timber to that place. The value of the special property of Darby must be the ten and a half cents per cubic foot deducting therefrom the expense of transportation of the timber from Seneca Falls to Troy. The plaintiff would have been bound to incur that expense to have earned the full contract price of ten and a half cents per cubic foot, the price payable in Troy. Unless, therefore,

the parties can rectify this error of their counsel there will have to be a new trial, as I see no evidence upon which the court can direct the proper deduction to be made so as to correct the verdict.

