Brady, J.
The controlling facts to be gathered from the testimony spread upon the record are that Poole & Sherman of Chicago loaned to one, B. D. Brown, $20,000, taking from him as collateral security for its payment certain bonds and capital stock. The transaction appears to have ■consummated upon the understanding that Brown was to accept a draft drawn by Poole & Sherman upon him payable to the order of the Corn Exchange bank of Chicago, and the draft so drawn was deposited by them in that bank for collection with the collaterals attached. It was dated November 3, 1884, and accepted November 5, 1884, by Brown payable at the Middletown bank, Middletown, New York. The draft was forwarded to the latter-named bank with the collaterals attached, but the time for. its payment was subsequently extended by Poole & Sherman. The plaintiff did not discount it or give any person credit for its amount, ■or sell the collaterals attached to it. The defendant’s bank did not advance anything upon it to Poole & Sherman, or "to Brown, for the draft was not paid. The defendant found "the collaterals among the securities of the Middletown bank •after its suspension on the 28th of November, 1884, and on the 3d of December following, the plaintiff demanded the the draft and the securities attached, the letter making the demand containing the statement that the Middletown bank was ordered to hold the securities until the draft was paid, *114 and such seems to have- been the fact. But whether- it was or not is not material. The draft having been sent to the Middletown bank for collection with the collaterals attached, it was the duty of that bank to hold them until the draft was paid, as it was equally its duty to surrender them when the draft was paid. Poole & Sherman were not parties to the action and the bona fides of the- loan was not and could not be a subject of investigation. If their presence was necessary to a complete determination of the controversy the remedy was provided for by the Code. The case as it stood, therefore, upon these facts was that Poole & Sherman loaned $20,000 to Brown on securities which he delivered as collateral, and the plaintiff having been selected for the collection of the draft upon Brown, sent it and the collaterals to the Middletown bank for it to obtain acceptance and payment. The latter bank had at no time on this transaction abstractly considered any right, title or property in the collaterals except as the bailee of the plaintiff and held them subject to its order—a mere custodian fora special purpose—and the attempt to surround it by a chain of extraneous facts and circumstances growing out of Brown’s relations to the companies, or either of them, of which the bonds and stocks were issues was of no practical advantage to the defendant, unless confusion might lead to errors of judgment in the ultimate disposition to be made of' the controversy. It is quite clear, and needs no citation of authorities to show it, that the plaintiff, having assumed the collection of the draft drawn to its order, was responsible to Poole & Sherman for the faithful discharge of its duties, and that the Middletown Bank was equally bound to the plaintiff, the payee having received the draft and collaterals charged with duties in regard to them. Edwards on Bills, 402, 403, 404, 4Y5, 4Y6.
Nor is there any doubt that the plaintiff, having a special interest in the draft and collaterals arising from its relation to Poole & Sherman, can maintain ■ an action against their agent, the Middletown Bank, to recover the property entrusted to its care after a proper demand made for it. Luckey v. Gannon, 6 Abb. N, S., 209; Barrett v. Warren, 3 Hill, 348; Campbell v. Parker, 9 Bos., 322; Frost v. Mott, 34 N. Y., 253; Baker v. Hoog, 7 N. Y., 355; Wheeler v. MacFarland, 10 Wend., 318.
If we look beyond these considerations upon matters which the defendant seeks to impress upon this controversy, we find that the collaterals delivered by Brown to Poole & Sherman were bought and paid for by him, according to his evidence; and if we look still further we find that, .even if he did not own them, he was duly authorized to use them for the purpose of borrowing money upon them. In *115 any aspect, therefore, the loaners stand aloof from any suggestion of fraud, diversion or wrong doing of any kind, or notice or quasi notice of any wrong doing. They received negotiable securities from the borrower, which passed by delivery and advanced upon them in good faith the amount asked.
The plaintiff now seeks to obtain this property from its agent, the Middletown Bank, and it is quite apparent the latter had no right to detain it, and that the defendant is not justified in refusing to give it up. It did not become a part of the assets of the Middletown Bank to be distributed, to its creditors, and would not except upon the payment of the lien of Poole & Sherman, who could sell it and apply the proceeds to meet the draft. It went into its possession charged with a trust which has not been performed and never became its property.
None of the exceptions taken by the defendant are found to be valid, and the suggestion of want of jurisdiction, predicated on some of the provisions of the Revised Statutes of the United States in relation to national banks, is answered by the case of Cragie et al v. Hadley (99 N. Y., 136), if any authority be necessary.
The judgment should be affirmed.
I concur, Daniels, J.