LEANDER W. KAUFMAN, as Executor, etc., Appellant, v.
FRANCIS A. SCHOEFFEL, as Sheriff, etc., Respondent.

*Husband and wife may hold personal property in common — right of a sheriff to take
possession of and deliver goods owned by a firm, to a purchaser at a sale under an
execution issued upon a judgment recovered against one member thereof — when the
designation by the judgment-debtor of certain goods to be levied upon operates as a
partition of the property — evidence — written statements made by a party are
admissible to contradict his testimony.*

This action was brought by the plaintiff, as the executor of his wife, who died on
April 30, 1883, against the defendant for wrongfully converting, on or about
September 28, 1883, certain liquors and barrels to his own use. The answer
alleged that the goods were levied upon and sold by the defendant, as sheriff,
under an execution issued upon a judgment recovered against the plaintiff, indi-
vidually, and that at the time of the levy the goods were owned by him or that
he had an interest therein liable to levy and sale under execution. Evidence
having been given upon the trial, which was sufficient to authorize the jury to
find that the plaintiff and his wife had been carrying on business as partners for
several years prior to her death, the trial judge submitted that question to the
jury and instructed them that if the plaintiff had a personal interest in the goods,
or if he and his wife owned the property together, the verdict should be for the
defendant.

*Held,* that he did not err in so charging; that while a husband and wife cannot be
copartners in trade or business they may own personal property in common.

The former decision made by this court in this case (37 Hun, 140) distinguished.

---

*Held December 30, 1887; adjourned from October Term, 1887.

That a claim made by the appellant's counsel that, conceding that the plaintiff might lawfully be, and was in fact, the owner of an undivided part of the goods, the attempted justification failed, for the reason that the sheriff levied upon and sold the entire property and not merely the plaintiff's interest therein, could not be sustained for the following reasons:

*First.* That the sheriff, for the purpose of making his levy upon the interest of the plaintiff, was entitled to take possession of the whole property, and upon a sale deliver it to the purchaser, who would take it subject to the rights of the plaintiff, as the executor of his wife, and that the evidence in this case did not show that he had exceeded his authority in making the sale in question.

*Second.* That there was no evidence before the court which showed that this objection was raised at the trial.

The deputy sheriff testified that after he had levied upon the goods in the store the plaintiff said that the value of the goods far exceeded the amount of the execution, and that the witness replied that he only wanted to take enough goods to satisfy the execution and costs, and told him that if he would point out goods to a sufficient value to cover that he would let him go on and sell the rest, and that the plaintiff then showed him the goods upon which the levy was made.

*It seems,* that this evidence would justify the jury in finding that the transaction amounted to an agreement between the plaintiff, representing the estate of his wife, and his judgment creditors, for whom the sheriff was acting, that the portion of the goods levied on should be treated as the sole property of the plaintiff, and was, in effect, a partition of the common property. (Per SMITH, P. J.)

Upon the trial a return, filed by the plaintiff with the collector, as required by the statute, signed by him "Leander W. Kaufman, of the firm of Kaufman & Co.," stating, among other things, that the said firm consisted of Leander W. Kaufman and Mary I. Kaufman, was received in evidence. The return was made upon a printed blank, at the foot of which was a blank jurat, but the jurat was not filled up or signed. It appeared from the language of the judge, in his charge to the jury, that he treated the return as having been sworn to.

*Held,* that the plaintiff was not prejudiced thereby for the following reasons:

*First.* That as the return contained a statement that the "undersigned" had been duly sworn, it was, on its face, equivalent to a statement by the plaintiff that he had verified it by his oath, but that the officer who administered the oath had omitted to sign the jurat.

*Second.* That if there was error it was waived by the omission of the plaintiff's counsel to call the attention of the judge to it.

*Third.* That the jurors had the paper before them in the jury room, and an opportunity to read it deliberately and see its contents.

*Fourth.* That, whether sworn to or not, the paper was a written statement deliberately made by the plaintiff, and was properly received to contradict him as a witness.

APPEAL from a judgment, entered on a verdict rendered at the Monroe Circuit and from an order denying a motion for a new trial made on the minutes of the justice before whom the action was tried.

*George D. Forsyth*, for the appellant.

*Henry G. Danforth*, for the respondent.

SMITH, P. J. :

The plaintiff alleged in his complaint that he is the executor of the last will of Mary I. Kaufman, who died on the 30th of April, 1883, and that the defendant, on or about the 28th of September, 1883, wrongfully converted to his own use certain liquors and barrels, the property of said deceased. The answer alleged, in substance, that the defendant was the sheriff of the county of Monroe, and as such, he levied on the said property by virtue of an execution issued upon a judgment against the said Leander W. Kaufman, which was the conversion alleged in the complaint, and that at the time of the levy the goods levied on were the property of said Leander, or that he had an interest therein liable to levy and sale under execution.

It appeared that at the time of the levy, the articles levied on were in a store at Nos. 170 and 172 West Main street, Rochester, where the wholesale liquor business was carried on, and were part of the stock then on hand in said store. It also appeared from undisputed evidence that at the time of the levy the plaintiff, Kaufman, had charge of said store, managed the business carried on there, and had the actual possession of the goods therein, and that such had been the case for several years next preceding the time of the levy, both before and after the death of the said Mary I. Kaufman, who was his wife. Those facts constituted *prima facie* evidence of title in the plaintiff, and unless controverted or explained by competent evidence, to the satisfaction of the jury, they warranted a verdict that the plaintiff was the owner of the property, in his own right, at the time of the levy.

The plaintiff, by way of explaining his possession and apparent control of the property, testified in substance that the property belonged to his wife and that the business was carried on by her during her lifetime; that he had no individual interest in it; that although the business was carried on in the name of Kaufman & Co., his wife was the only member of the firm; and that in the transaction of the business he was employed by her and acted as her agent at a fixed salary payable monthly, and had authority to sign her name.

His testimony was contradicted in several particulars. It appeared in evidence, that on his examination in certain supplementary proceedings against him, he testified that he was a member of the firm of Kaufman & Co. ; that the other member of the firm was Mary I. Kaufman, and that he had no fixed salary. It also appeared, that in April, 1882, in pursuance of the United States Statutes relating to internal revenue, requiring persons intending to engage in the business of rectifying liquors to give notice thereof to the collector of the district, and in the case of a firm, to state in the notice the name of each member of the firm, the plaintiff delivered to the collector a notice in writing, signed by him in the name of "Kaufman & Co.," which stated that Leander W. and Mary I. Kaufman, intended to carry on said business under the name of Kaufman & Co., and gave the name of Leander W. Kaufman as that of a person interested or to be interested in the business. He also filed with the collector a return, as required by the statute, signed by him, "Leander W. Kaufman, of the firm of Kaufman & Co.," stating, among other things, that said firm consisted of Leander W. Kaufman and Mary I. Kaufman. Mrs. Kaufman died on the 30th of April, 1883. On the first day of May, in that year, the plaintiff filed with the collector a similar notice and return stating that he intended to carry on the business in his own name, and that he was the person interested in it. In July, following, he executed in his own name, a chattel mortgage upon the stock in the store, including the goods in question, to secure the payment of the sum of $8,500 owing for goods shipped to him after his wife's death. The plaintiff did not take out letters testamentary, as executor of his wife's will, till after the defendant levied on the goods, and this suit was commenced the day after the letters were issued.

The written declarations of the plaintiff, above referred to, were properly received in evidence, to contradict his testimony given at the trial. The contention of the plaintiff's counsel that they did not tend to contradict him can hardly be maintained. The chattel mortgage was more than a declaration that he had an interest in the goods, it was an act by which he assumed, not as executor, but in his own right, to sell the goods and pass the complete, legal title. Although the notices and returns stated that the parties *intended* to engage in business, etc., not that they had done so, the papers were

filed as a prerequisite, under the statute, to engaging in such business, without which the business would have been illegal, and under which, the business was in fact licensed and carried on. Besides, the papers so filed stated as then existing facts, the partnership and the plaintiff's interest.

The only attempt made to corroborate the plaintiff, was by a witness named Oliver, who testified on his direct examination, on being shown an inventory of the goods in question, that the goods were sold to Mrs. Kaufman, and he subsequently spoke of them as sold to Kaufman & Co., and on his cross examination, said that he did not refer to any particular goods, but that he testified to the class of goods specified in the inventory. The plaintiff gave some testimony for the purpose of explaining his action respecting the notices and returns to the collector, and the chattel mortgage, the substance of which was, that he then acted for his wife, or for the benefit of her estate.

The deputy sheriff who made the levy testified that in the first place he levied on the goods in the store; that Kaufman then said the value of the goods in the store far exceeded the amount of the execution, and that the witness replied that he only wanted to take enough goods to satisfy the execution and costs, and told Kaufman that if he would point out goods to a sufficient value to cover that, he would allow him, Kaufman, to go on and sell the rest. That Kaufman showed him a quantity of goods stored in the back part of the store, and witness told him he would levy on them, which he did and afterwards sold them. That testimony was not contradicted. Kaufman testified, that he told the officer the goods belonged to his wife.

The foregoing statement is a summuary of the testimony in the case respecting the ownership of the goods. The testimony obviously presented a question for the jury, and if they disbelieved the explanatory testimony, given on the part of the plaintiff, as they well might, it was competent for them to find that Kaufman owned, in his own right, an undivided half of the goods, or even that he was the sole owner of the whole. There is, therefore, no ground for interfering with the verdict as being against the weight of evidence; and the plaintiff's request that the court direct the jury to find a verdict for the plaintiff for the value of the property, to be assessed by them, was properly refused.

The questions above indicated were left to the jury, the trial judge having instructed them that if Kaufman had no personal interest in the goods, they should find for the plaintiff, but that if he had a personal interest in them, or if he and his wife owned the property together, the verdict should be for the defendant.

Other questions are presented by the appeal. The appellant's counsel suggests that for aught that appears, the jury may have put their verdict upon the latter branch of the alternative above stated, and assuming that they did, he contends that the verdict cannot be sustained. He contends that husband and wife cannot be copartners in trade or business. We so held, in this case, on a former appeal. (37 Hun, 140.) That was the only question then discussed or decided. The question whether under our statutes, husband and wife may own personal property in common, was not considered. At the trial now under review, the learned court charged in favor of the latter proposition. We see no reason to question the correctness of the charge in that respect. Chapter 472 of the Laws of 1880, seems to recognize the right of husband and wife to hold lands as tenants in common, joint tenants or tenants by entireties. If they may hold land in common, why not personalty? Under the statutes, the right of a married woman, to take and hold personal property, is as broad and absolute, as her right to take and hold real estate.

It is also contended by the appellant's counsel, that conceding the plaintiff might lawfully be, and was in fact, the owner of an undivided part of the goods, the attempted justification fails, for the reason that the sheriff levied upon and sold the entire property, and not merely the plaintiff's interest. The sheriff had the right to levy upon and sell the interest of Kaufman in the goods, and, for the purpose of making his levy effectual, to take possession of the whole property, and, upon a sale, to deliver it to the purchaser, who would take it, subject to the rights of the plaintiff, as executor of his wife's estate. The cases of *Wheeler* v. *McFarland* (10 Wend., 318); *Smith* v. *Acker* (23 id., 653); *Waddell* v. *Cook* (2 Hill, 47), and *Atkins* v. *Saxton* (77 N. Y., 195), cited by the appellant's counsel, are authorities for the proposition above stated. They also assert, that when a sheriff exceeds that limit, and, instead of levying on the debtor's interest, levies upon and seizes the property, as the sole property of the debtor, he is a trespasser. It is obvious, how-

ever, that in order to hold the sheriff liable as a trespasser, under the latter rule, it must appear affirmatively, that he manifested an intention to treat the thing levied on, as the sole property of the debtor, by some act or claim, other than the bare levying on the entire property and exposing it for sale. And to that effect are the reported cases. In *Wheeler* v. *McFarland* the sheriff advertised the whole property. As SAVAGE, Ch. J. said, in deciding the case, he did not propose to sell, subject to the plaintiff's claim, but in defiance of it. In *Waddell* v. *Cook* the sheriff sold the whole interest. In a note to that case, the reporter says the authorities give no sanction to the idea that the sheriff would be protected, provided he should expressly sell the whole interest. In *Atkins* v. *Saxton* the levy was upon the whole property, and was admitted to be in hostility to the rights of the plaintiff and every other person. (P. 199.)

It is difficult to find evidence, in this case, that the sheriff exceeded the just limits of his authority. What transpired at the time of the levy does not distinctly appear, except as above stated. The deputy sheriff was asked by the plaintiff's counsel, on cross-examination, " Did you not make this levy upon the interest that Leander W. Kaufman had in that property as copartner of Mary I. Kaufman ? " He answered that he did not. That was merely a denial that he levied on a copartnership interest. There was evidence that when the officer took the goods away, he was told by Kaufman, that he Kaufman, had no interest in them, and that they belonged to Mary I. Kaufman, and that if he sold them he did so at his peril; but it does not appear that the goods were removed at the time of the levy. Besides this, there is only the statement that some of the packages of goods were sold It can hardly be said that there was evidence that the sheriff levied on or sold anything more than the interest of Kaufman.

The justification, as set up in the answer, does not rest exclusively upon the assertion that Kaufman was the sole owner. The averment in the answer is in the alternative that Kaufman owned the property or had a leviable interest therein. The distinction between a claim in that form, and an unqualified claim of absolute property in the debtor, set up in the answer, was commented on and regarded as very material, by Mr. Senator Verplanck in *Smith* v *Acker* (*supra*, pp. 668, 669.)

There is another view to be taken of this question. It will be remembered that the officer who made the levy testified that upon his telling Kaufman that if he would point out goods of sufficient value to satisfy the execution he would allow Kaufman to sell the rest. Kaufman pointed out the goods that were levied on. The remainder of the goods were left in Kaufman's possession. We are inclined to think that the jury were authorized to find from the evidence, that the transaction amounted to an agreement between Kaufman, representing the estate of his wife, and the judgment creditors of Kaufman, for whom the sheriff was acting, that the portion of the goods levied on should be treated as the sole property of Kaufman and was, in effect, a partition of the common property. That it was competent for Kaufman, acting for the estate of his wife, to allow such severance, is unquestionable. (*Tripp* v. *Riley*, 15 Barb., 334; *Fobes* v. *Shattuck*, 22 id., 568.) The waiver of the original levy and the relinquishment by the sheriff of all claim upon the large part of the stock not finally levied on, constituted a good consideration for the agreement of Kaufman acting in behalf of the estate of his wife. The letters testamentary, subsequently taken out by Kaufman, related back to the time of the death of his testatrix, legalized his intermediate acts in respect to the estate, and estopped him from denying their validity. (*Vroom* v. *Van Horne*, 10 Paige, 549.)

But it is a sufficient answer to the contention now under consideration, that there is no evidence before us that such contention was made at the trial. If it had been, for aught that appears, the defendant might have met it, by showing more fully what occured at the time of the levy and the sale. It cannot be urged, for the first time, on appeal.

One other question remains. It is apparent from the language of the judge in his charge, when speaking of the return made by the plaintiff to the collector, in April, 1882, that the judge treated the return as having been sworn to, and the jury probably so understood the charge. The return was evidently made upon a printed blank, at the foot of which was a blank jurat, but the jurat was not filled up or signed. The appellant's counsel contends that this was an error on the part of the court by which the plaintiff was prejudiced. To this there are several answers: (1.) Although the jurat was not

signed the return was signed by the plaintiff and it contained a statement that the "undersigned," that is, the plaintiff, had been duly sworn. That statement was not controverted, and as *against* the plaintiff it was evidence of the fact. The paper on its face was equivalent to a statement by the plaintiff that he had verified it by his oath, but that the officer who administered the oath had omitted to sign the jurat. (2.) If there was error in this respect it was waived. For aught that appears, the plaintiff's counsel had full opportunity to inspect the paper at the trial. The record shows that he understood that the jurat was not signed, for he stated to the judge that the paper was not .sworn to after the jury retired, but before they rendered their verdict. On being replied to by the judge that the paper was sworn to he took no steps, and made no request, to have the paper again looked at and the error corrected. (3.) The jury had the paper before them in the jury-room, and an opportunity to read it deliberately and see its contents. (4.) Although no exception was taken to the remarks of the judge on this subject, we have examined the matter with a view of ascertaining whether the plaintiff was prejudiced thereby. Whether sworn to or not the paper was a written statement deliberately made by the plaintiff, and was properly received to contradict him as a witness. It cannot be said that a verification would have added to its force for that purpose, except upon the assumption that the statement of the witness was not evidence of the truth, unless made under oath. An assumption, which, of itself, would be a strong impeachment of his veracity.

The judgment and order should be affirmed.

HAIGHT and BRADLEY, JJ., concurred; BARKER, J., not sitting.

Judgment and order affirmed.